[No. B044211. Second Dist., Div. Six. Aug. 13, 1990.]

MELANIE C. BILLIG et al., Plaintiffs and Appellants, v.
PAM VOGES, as City Clerk, etc., Defendant and Respondent.

COUNSEL

Michael T. Nolan for Plaintiffs and Appellants.

Lyon & Picquet, Roger Picquet, and Jeffrey Jorgensen, City Attorney, for Defendant and Respondent.

OPINION

STONE, (S. J.), P. J.—Appellants Melanie C. Billig, Allen K. Settle and others appeal from the judgment denying their petition for writ of mandate, which sought to compel respondent City Clerk Pam Voges to process their referendum petition and submit it to the city council. We affirm.

FACTS

On March 21, 1989, the San Luis Obispo City Council adopted Ordinance number 1135. The ordinance is a comprehensive rezoning measure

approving mixed-use development of certain city owned property in the downtown area. The ordinance incorporates three exhibits, Exhibits "B," "C," and "D." Exhibit "B" is a map of the affected area. Exhibits "C" and "D" contain detailed environmental provisions, findings, and conditions for approval. Appellants, who oppose the entire ordinance, circulated a referendum petition protesting its adoption.

On April 19, 1989, appellants submitted their referendum petition (petition) to respondent for processing. Across the top of the petition was printed the following:

"To the City Council of the City of San Luis Obispo:

"Pursuant to Elections Code 4051, we, the undersigned, more than ten percent of the number of registered voters in the City according to the County Clerk's last official report of registration hereby present this petition protesting your adoption on March 21, 1989, of Ordinance No. 1135." Following the words, "The full text of the City Attorney's published summary of the 22 page ordinance is as follows," appellants included a copy of the city's published summary of the ordinance which had appeared in the local newspaper. Immediately to the right of the summary was placed a copy of Exhibit "B." Immediately below the summary was printed: "Section 1 of the Ordinance states: 'That the zoning map shall be amended as shown on Exhibit "B".' Section 3 states: 'The proposed zoning and preliminary plan, PD 1418 is approved subject to the findings and conditions listed in Exhibit "D".' We request that Sections 1 and 3 and the ordinance be entirely repealed by you, or submitted to a vote of the people at a regular or special election."

Appellants did not include in their petition section 2 of the ordinance, or exhibits "C" and "D" which comprise the major portion of the ordinance.

On May 4, 1989, respondent wrote appellants that she was rejecting the petition for filing on the advice of the acting city attorney who had determined it did not comply with Elections Code section 4052. (All further section references are to the Elections Code unless otherwise indicated.) Respondent's letter stated: "'Recent case law interpreting this statute indicates the full text of the ordinance or portion thereof which is in issue must be circulated. The referendum petition has serious deficiencies because the circulators chose to print only two sections of the ordinance, . . . and omitting the full text of exhibits . . . . This material was necessary to provide citizens with crucial information in order to make a fully informed decision as to whether to support the referendum petition. Without this information, the petition does not meet the high standards set by State law to qualify as a valid referendum.'"

Appellants filed their petition for writ of mandate on May 11, 1989. They alleged therein that respondent had no authority to determine the validity of the text of their petition and that her ministerial duty was confined to examining the signatures affixed thereto.

The trial court denied the writ on the same ground used by respondent in refusing to process appellants' petition, insufficient compliance with section 4052. The court found that two decisions interpreting the statute, *Creighton* v. *Reviczky* (1985) 171 Cal.App.3d 1225 [217 Cal.Rptr. 834] and *Chase* v. *Brooks* (1986) 187 Cal.App.3d 657 [232 Cal.Rptr. 65], were controlling.

## DISCUSSION

The sole issue to be determined is whether appellants failed to comply with section 4052 by not printing the entire text of the ordinance, including its exhibits, on their petition.

Section 4052 provides in pertinent part: "Across the top of each page of the referendum petition there shall be printed the following:

"'Referendum Against an Ordinance Passed by the City Council'

"Each section of the referendum petition shall contain the identifying number or title *and text of the ordinance or the portion of the ordinance which is the subject of the referendum.*"[1] (Italics added.)

Section 4052 applies to municipal referendums. It is part of division 5 of the Elections Code, which contains provisions setting forth procedures for the exercise of the initiative and referendum powers in state, county, municipal, and district elections. The Legislature is constitutionally empowered to adopt such provisions. (Cal. Const., art. II, § 11.)

San Luis Obispo is a charter city. Although state laws pertaining to the procedures for exercising the initiative and referendum powers do not apply to cities with charters (Cal. Const., art. II, § 11 & art. XI, § 3, subd. (a)), the city's charter section 304 provides: "The provisions of the Elections Code of the State of California, as the same now exists or may hereafter be amended governing the initiative, referendum and recall of municipal officers, shall apply to the use thereof in this City insofar as the provisions of the elections code are not in conflict with this Charter." This charter section makes applicable to the city the procedures governing the initiative and

---

[1] These portions of the statute are designated as subdivisions (a) and (b) in an amendment effective January 1, 1990.

referendum powers which are contained in the Elections Code. (See *Walker v. City of Salinas* (1976) 56 Cal.App.3d 711, 714 [128 Cal.Rptr. 832].)

The issue before this court, whether pursuant to section 4052 a municipal referendum petition must contain under each section the entire text of the ordinance, or the portion of it being challenged, was decided in *Creighton v. Reviczky, supra,* 171 Cal.App.3d 1225.

In *Creighton,* the appellants' referendum petition contained only the identifying number and title of the ordinance. The appellate court determined that the language of section 4052 clearly requires municipal referendum petitions to contain the entire text of the ordinance or portion thereof which is the subject of the referendum. (171 Cal.App.3d at p. 1230.) Stating it examined the statute's legislative history, the *Creighton* court concluded that the purpose of section 4052 is to reduce confusion as to the contents of referendum petitions in the minds of electors. (*Id.,* at pp. 1230-1231.) The appellate court found that, by failing to apprise prospective signers of the substantive portions of the challenged ordinance, the appellants' petition failed to provide the electors with the information they needed to intelligently exercise their rights under the referendum law, thereby frustrating the purpose of section 4052. (*Id.,* at pp. 1232-1233.)

*Creighton's* holding was approved in *Chase v. Brooks, supra,* 187 Cal.App.3d 657. In that case, the appellant claimed that the referendum petition failed to comply with section 4052 by not including mandatory caption language and the complete text of the challenged ordinance. In determining that the subject petition was fatally defective for not including the complete text of the ordinance on which the referendum was sought, the appellate court agreed with the reasoning in *Creighton* on the basis of "the legislative history of section 4052, making it clear it was designed to reduce confusion as to the contents of referendum petitions and to promote the full enlightenment of prospective signers of the substantive provisions of a challenged ordinance, . . ." (P. 662.) The appellate court stated that, where a petition does not comply with the reasonable objectives of statutes designed to protect electors from confusing or misleading information, its deficiencies threaten the integrity of the election process, warranting a refusal to file the petition. (P. 663.)

Appellants herein contend that the analysis in *Creighton* and *Chase* is faulty because in construing section 4052 neither case discussed or considered: (1) "the clear omission in section 4052 to cloak a local public officer with any authority to determine if a referendum petition complies with the statute," and (2) the First Amendment protections inherent in a referendum

petition.[2] Appellants further contend that respondent should not have refused to process their petition, because they complied with section 4052 by including a copy of the city's published summary of the ordinance.

Appellants' latter contention has no merit. They erroneously reason that a published summary, which notifies city voters about the city council's approval of an ordinance prior to its final adoption (see Gov. Code, § 36933, subd. (b)), has the same function as a referendum petition, and therefore the summary in the subject petition suffices to inform prospective signers of the challenged ordinance. Appellants are mixing apples with oranges. Unlike a referendum, a summary does not ask electors to vote against the adoption of a particular ordinance, but is a mere notification of a prospective law which gives voters the opportunity to inquire further. On the other hand, because a referendum petition asks electors to make a decision about their acceptance or nonacceptance of a proposed ordinance, it requires that voters be fully informed of the substance of the challenged measure so that the petition reflects the actual, informed will of the people.

Section 4052 requires that a referendum petition contain the "text" of the challenged ordinance. The word "text" is defined as "the original words and form of a written or printed work." (Webster's New Collegiate Dict. (9th ed. 1983) p. 1220.) ■■ In construing the intent of the Legislature, the court first looks to the language of the statute itself; if the language is clear and there is no uncertainty as to intent, the court looks no further. (*State of California* ex rel. *Van de Kamp* v. *Texaco, Inc.* (1988) 46 Cal.3d 1147, 1182 [252 Cal.Rptr. 221, 762 P.2d 385].) Here, there is no uncertainty over the Legislature's use of the word "text." It is obvious therefrom that the Legislature intended referendum petitions must contain the exact wording of the challenged measure. Appellants' summary is a mere several-paragraph description or restatement of the main points of the 22-page ordinance.[3] It does not constitute the text of the ordinance because it does not contain the measure's actual words.

---

[2] Appellants' additional argument, that *Creighton* and *Chase* should not be followed since they rely on *Clark* v. *Jordan* (1936) 7 Cal.2d 248 [60 P.2d 457, 106 A.L.R. 549], is without merit. Appellants state that *Clark* involved the refusal of the Secretary of State to submit to the electors a proposed *initiative* measure, and therefore the two former cases are premised on a false analogy. Appellants explain that an initiative petition, if found defective, can be resubmitted, while a referendum petition is a "one shot try," which, if improperly denied, is forever silenced. We fail to see how this factual differentiation spoils *Creighton*'s and *Chase*'s analysis. These cases relied on the general principle enunciated in *Clark* that statutes which are designed to give the voter the information necessary to intelligently exercise elector rights are constitutional and enforceable. (*Creighton* v. *Reviczky, supra,* 171 Cal.App.3d at p. 1232; *Chase* v. *Brooks, supra,* 187 Cal.App.3d at p. 663.) Appellants provide no authority for their implied proposition that this principle is relevant only to initiative, and not referendum, petitions.

[3] The summary appearing in appellants' petition states: "On March 7, 1989, the San Luis Obispo City Council voted 3-1 (Rappa absent) to introduce Ordinance No. 1135 (1989

■ Technical difficulties in referendum petitions will not invalidate the petitions if they substantially comply with statutory requirements. (*Assembly* v. *Deukmejian* (1982) 30 Cal.3d 638, 652 [180 Cal.Rptr. 297, 639 P.2d 939].) In determining whether a petition is valid despite a technical defect, a paramount concern is whether the defective form of the petition frustrates the purpose of the technical requirement. (*Ibid.*) ■ Here, the defective form of appellants' petition violates the purpose of section 4052 because it does not furnish the information the statute requires, i.e., the text or language of the challenged law. (See *Creighton* v. *Reviczky, supra*, 171 Cal.App.3d at p. 1233; *Chase* v. *Brooks, supra*, 187 Cal.App.3d at p. 664.) We therefore do not agree with appellants that their petition complies with section 4052.

Nor do we agree with appellants that the reasoning of *Creighton* and *Chase* is faulty based on the failure of those appellate courts to discuss whether a city clerk has the authority to refuse a petition pursuant to section 4052, and whether enforcement of the statute interferes with First Amendment protections.

As to point one, appellants argue that section 4052's silence regarding any authority bestowed on a city clerk to enforce the statute means that a city clerk's authority is limited to determining whether or not the referendum petition is signed by the requisite number of voters. (§§ 4051 [petition signed by 10 percent of voters], 4053 [determination of number of signatures], 4054 [examination of signatures].)

First of all, to accept appellants' argument is to render the provisions of section 4052 null and void. If, according to appellants, a petition must be accepted regardless of its compliance with the statute, then the statute is unenforceable.

Second, a city clerk's duty is limited to the ministerial function of ascertaining whether the *procedural* requirements for submitting a petition have

---

Series), which certifies the Final Environmental Impact Report, rezones a city-owned downtown parcel from C-C-H to C-C-H-PD, and approves the preliminary development plan for a five-story, mixed-use commercial project known as Court Street Center. [¶] The ordinance includes environmental impact mitigation measures, and sets numerous conditions which must be met as part of the project's development. Required conditions address land use compatibility, traffic and parking, utilities and public services, visual and esthetic quality, geology, noise, and cultural resource protection. It also cites public benefits of the project, including: onsite public parking, public landscape amenities and open space, public art gallery; utility, fire protection, and street improvements; and improved commercial and recreational opportunities in the downtown. [¶] The Council must vote again to approve the ordinance before it can take effect. That action is tentatively scheduled for March 21, 1989 at a regular City Council meeting to begin at 7:00 p.m. in the Council Chambers of City Hall, 990 Palm Street. [¶] Copies of the complete ordinance are available in the City Clerk's Office . . . ."

been met. (*Farley* v. *Healey* (1967) 67 Cal.2d 325, 327 [62 Cal.Rptr. 26, 431 P.2d 650] [initiative petition].) Section 4052 involves purely procedural requirements for submitting a referendum petition. Therefore, a city clerk who refuses to accept a petition for noncompliance with the statute is only performing a ministerial function involving no exercise of discretion.

Third, the absence of any language in section 4052 giving express authority to a city clerk to enforce its terms is unimportant. The very existence of the statute means it is there to be enforced. Administrative agencies, including public officials in charge of such agencies, are expressly forbidden from declaring statutes unenforceable, unless an appellate court has determined that a particular statute is unconstitutional. (Cal. Const., art. III, § 3.5.) Section 4052 has not been declared unconstitutional by an appellate court in this state. Consequently, the offices of city clerks throughout the state are mandated by the constitution to implement and enforce the statute's procedural requirements. In the instant case, respondent had the clear and present ministerial duty to refuse to process appellants' petition because it did not comply with the procedural requirements of section 4052.

Appellants' reliance on *Farley* v. *Healey*, *supra*, 67 Cal.2d 325, and *Yost* v. *Thomas* (1984) 36 Cal.3d 561 [205 Cal.Rptr. 801, 685 P.2d 1152] is misplaced. They cite these cases as authority for the proposition that a city clerk's authority is limited to calculating the number of signatures on a referendum petition. In *Farley*, the county registrar of voters refused to determine the sufficiency of signatures on an initiative measure which urged an immediate American withdrawal from Vietnam. In *Yost*, the city clerk refused to process a referendum petition on the advice of the city attorney that the subject of the referendum was improper. In both of these cases, such action was overruled on the ground that local officials do not have the authority to reject a voters' petition for its subject matter. (*Farley*, *supra*, 67 Cal.2d at p. 327; *Yost*, *supra*, 36 Cal.3d at p. 564, fn. 2.)

In the present case, the city clerk relied on the advice of the acting city attorney that the petition did not comply with section 4052. However, since the statute involves mere procedural requirements for submitting referendum petitions, no decision was made herein regarding the validity of the subject petition's subject matter. As *Farley* itself states, local officials have the ministerial duty to ascertain whether procedural requirements have been met. (67 Cal.2d at p. 327.) In this case, respondent city clerk had the ministerial duty to reject appellants' petition, which was procedurally invalid on its face.

Appellants' other point, that an analysis of section 4052 should involve First Amendment considerations, is unavailing. Apart from appellants'

failure to raise this issue in the trial court, it has no substantive merit. They claim that, by refusing to process their petition, respondent clearly infringed on their right to petition the government, which is a form of free speech. This argument is illogical in light of appellants' statement that they are not challenging the constitutionality of section 4052. By refusing to process their petition, respondent was merely following the dictates of the uncontested statute. Moreover, section 4052 does not regulate the content or subject matter of referendum petitions. By solely providing a procedure for the exercise of the referendum right, it is not a substantive restriction invoking First Amendment considerations.

The judgment is affirmed.

Gilbert, J., and Abbe, J., concurred.