[No. G012399. Fourth Dist., Div. Three. July 30, 1993.]

ERNEST A. NELSON et al., Plaintiffs and Respondents, v.
MARY A. CARLSON, as City Clerk, etc., et al., Defendants and
Appellants.

COUNSEL

Jerry M. Patterson, City Attorney, Burke, Williams & Sorensen, Jerry M. Patterson, Virginia M. Pesola and Anthony P. Condotti for Defendants and Appellants.

Michelle A. Reinglass for Plaintiffs and Respondents.

OPINION

MOORE, J.—Defendants Mary A. Carlson, the City Clerk of Dana Point, and the City of Dana Point appeal from a judgment ordering Carlson to certify a referendum petition to the city council that challenges the council's passage of a resolution adopting a general plan and a local coastal program land use plan amendment (hereafter the plan). The primary issue is whether the referendum is invalid under Elections Code section 4052[1] because plaintiffs failed to attach a copy of the plan to their petition.

FACTS

Dana Point is a general law city incorporated on January 1, 1989. Defendant Carlson is the Dana Point City Clerk. Plaintiffs reside in Dana Point and are members of a group named the Dana Point Action Coalition.

On July 9, 1991, the Dana Point City Council approved a resolution adopting the plan. As amended, the fifth paragraph of the resolution declared, "The Plan is detailed in Exhibit 'B' attached hereto and incorporated herein by this reference. . . ." The document attached as exhibit B was a one-page document stating, "EXHIBIT 'B' is the DRAFT GENERAL PLAN and LOCAL COASTAL PROGRAM LAND USE PLAN AMENDMENT dated FEBRUARY

---

[1]All statutory references are to the Elections Code unless otherwise specified.

25, 1991."[2] The coalition opposed the resolution and began circulating petitions to require the city council to rescind the resolution or submit it to a vote of the city's electorate.

The Dana Point City Attorney objected to the form of the initial petition because it failed to cite the resolution's correct identification number and did not contain the entire text of the resolution and incorporated exhibits. After consulting with the city's attorney, the coalition revised the petition's format and circulated copies of it for signature.

As revised, the petition contained the text of the resolution with the following exceptions: 1) Concerning the exhibits, it failed to insert the phrase "and incorporated herein by reference," in two paragraphs; and 2) in paragraph five, referring to the city's obligation to adopt a general plan, it cited the wrong Government Code sections. The plan incorporated into the resolution was not attached to the revised petition. Below the text of the resolution appeared a short explanation on the nature and scope of a general plan, a statement that the plan is available at city hall, and the following: "DO NOT SIGN THIS PETITION IF YOU CAN'T MAKE AN INFORMED DECISION WITHOUT STUDYING THE GENERAL PLAN FURTHER."

Plaintiffs claimed persons circulating petitions carried a copy of the plan with them. Several signatories declared they had an opportunity to review the plan and understood the petition when they executed it. Defendants denied copies of the plan were always available for review and presented conflicting evidence on this point.

The coalition collected approximately 2,400 signatures and delivered the petitions to Carlson on August 8. Carlson reviewed the petitions and verified 2,309 signatures, enough to qualify a valid petition for the ballot.[3] However, Carlson refused to take further action on the petition for three reasons: 1) The document attached to the revised petition as the resolution was actually a proposed draft of it, not the resolution as adopted; 2) the plan incorporated into the resolution as an exhibit was not attached to the referendum petition; and 3) the circulators used a stamp to identify the dates they obtained the signatures.

Plaintiffs sought a writ of mandate directing Carlson to certify the referendum to the city council and to take the necessary steps to place it on the

---

[2] Plaintiffs contend the plan was never incorporated into the resolution. This assertion misstates the record. Plaintiffs rely on the version of the resolution as proposed to the city council which merely stated the plan was "attached" as an exhibit. The record of the city council's July 9 meeting reflects the proposed resolution was amended before being approved and in its final form the resolution incorporated the plan by reference.

[3] In August 1991, 10 percent of Dana Point's registered voters constituted 1,640 persons.

next election ballot. The trial court found plaintiffs had substantially complied with the statutory requirements and entered judgment granting relief.

## DISCUSSION

On appeal, defendants repeat their original objections to the revised petition. We conclude plaintiffs' failure to attach a copy of the plan to each revised petition circulated constitutes a fatal defect.

The state Constitution recognizes the people have reserved the powers of initiative and referendum. (Cal. Const., art. II, §§ 9, subd. (a), 11; *Ley* v. *Dominguez* (1931) 212 Cal. 587, 593 [299 P. 713].) ■ ■ ■ ■■ Because of the importance of the initiative and referendum process, courts liberally construe the exercise of these powers. (*Hunt* v. *Mayor & Council of Riverside* (1948) 31 Cal.2d 619, 628 [191 P.2d 426]; *Ley* v. *Dominguez, supra,* 212 Cal. 587, 593.)[4]

■ "[T]echnical deficiencies in referendum and initiative petitions will not invalidate the petitions if they are in 'substantial compliance' with statutory and constitutional requirements. [Citation.] A paramount concern in determining whether a petition is valid despite an alleged defect is whether the purpose of the technical requirement is frustrated by the defective form of the petition. 'The requirements of both the Constitution and the statute are intended to and do give information to the electors who are asked to sign the . . . petitions. If that be accomplished in any given case, little more can be asked than that a substantial compliance with the law and the Constitution be had, and that such compliance does no violence to a reasonable construction of the technical requirement of the law.' [Citation.]" (*Assembly* v. *Deukmejian* (1982) 30 Cal.3d 638, 652-653 [180 Cal.Rptr. 297, 639 P.2d 939], cert. den. and app. dism. 456 U.S. 941 [72 L.Ed.2d 463, 102 S.Ct. 2003]. See also *Billig* v. *Voges* (1990) 223 Cal.App.3d 962, 968 [273 Cal.Rptr. 91].)

Persons objecting to the adoption of a city ordinance may circulate a petition against it. If at least 10 percent of the city's registered voters sign

---

[4]The powers of initiative and referendum apply only to legislative acts. (*Wheelright* v. *County of Marin* (1970) 2 Cal.3d 448, 457 [85 Cal.Rptr. 809, 467 P.2d 537]; *Southwest Diversified, Inc.* v. *City of Brisbane* (1991) 229 Cal.App.3d 1548, 1555 [280 Cal.Rptr. 869]; *Marblehead* v. *City of San Clemente* (1991) 226 Cal.App.3d 1504, 1509 [277 Cal.Rptr. 550].) Dana Point's City Council adopted the plan by resolution as mandated by Government Code section 65356. Nonetheless, the adoption of a general plan is deemed a legislative act (Gov. Code, § 65301.5) and while the Elections Code provisions governing referendum petitions refer only to "ordinances," these statutes should equally apply to a city council resolution adopting a general plan. (See *Midway Orchards* v. *County of Butte* (1990) 220 Cal.App.3d 765, 773-781 [269 Cal.Rptr. 796] [reaching the same conclusion concerning a county's amendment of a general plan].)

the petition and it is returned to the city clerk within 30 days of the ordinance's adoption, the legislative body must reconsider the ordinance. (§ 4051.) If the legislative body does not repeal the ordinance in its entirety, the ordinance must be submitted to the voters and will become law only if a majority of the electorate votes for it. (§ 4055.)

 Defendants claim the revised petition failed to satisfy the requirements of section 4052. This statute deals with the contents of a referendum petition. Section 4052, subdivision (b) provides "Each section of the referendum petition shall contain (1) the identifying number or title, and (2) the text of the ordinance or the portion of the ordinance which is the subject of the referendum."

Several cases have considered the scope of section 4052. In *Creighton* v. *Reviczky* (1985) 171 Cal.App.3d 1225 [217 Cal.Rptr. 834], the referendum petition failed to include the text of the challenged ordinance. The Court of Appeal rejected a claim section 4052 permitted a petition to contain either the ordinance's identifying number or its title and text, noting the statute's purpose is to reduce confusion as to the contents of a referendum petition. "It is clear that the hazard of confusion which the Legislature sought to reduce is the confusion in the minds of the electors as to the true import of the referendum petitions they are asked to sign. The designation of the protested legislation by number only, as appellants have construed the section, would create and compound confusion as to the measure. The requirement that the petition must contain the text of the protested legislation, as respondent contends, would reduce confusion to a practical minimum. This would also construe the words of the statute in context, and would harmonize section 4052 with the other statutes which make up the scheme which the Legislature has prescribed for the exercise of the initiative and referendum powers." (171 Cal.App.3d at p. 1231.)

In *Chase* v. *Brooks* (1986) 187 Cal.App.3d 657 [232 Cal.Rptr. 65], a city council enacted a zoning ordinance reclassifying property described in an attached exhibit. A petition protesting the ordinance was circulated, but it failed to include the exhibit describing the property affected by the ordinance. The appellate court concluded the failure to include the exhibit in the petition violated section 4052. Noting section 4052 was "designed to reduce confusion as to the contents of referendum petitions and to promote the full enlightenment of prospective signers of the substantive provisions of a challenged ordinance," the court agreed with *Creighton*, that the statute "requires municipal referendum petitions to contain the entire text of the ordinance or the portion thereof which is the subject of the referendum." (187 Cal.App.3d at pp. 662-663.)

*Chase* also found there was no substantial compliance with section 4052. "Although such statutes should be liberally construed to permit the

exercise by the electors of this most important privilege, the statutes designed to protect the elector from confusing or misleading information should be enforced so as to guarantee the integrity of the process. [Citations.] Consequently, ' "[s]ubstantial compliance . . . means *actual* compliance in respect to the substance essential to every reasonable objective of the statute." ' [Citations.] In other words, technical deficiencies in referendum petitions will not invalidate the petitions if they substantially comply with statutory and constitutional requirements . . . ." (*Chase* v. *Brooks, supra,* 187 Cal.App.3d at p. 663.) ▌▌ Referring specifically to the failure to include the exhibit in the referendum petition, the court declared: "There has not been substantial compliance with the requirements of section 4052 because the petitions fail to apprise prospective signers of the precise location of affected real property to permit them to informatively evaluate whether they should sign the referendum petition challenging the substantive provisions of the ordinance." (187 Cal.App.3d at p. 664.)[5]

Finally, in *Billig* v. *Voges, supra,* 223 Cal.App.3d 962, plaintiffs circulated a referendum petition opposing a 22-page zoning ordinance. The petition contained a summary of the ordinance that appeared in a local newspaper and only one of three exhibits incorporated into the ordinance. The trial court determined the referendum petition was invalid. The Court of Appeal affirmed. While conceding technical deficiencies alone would not invalidate the petition, the court held "the defective form of appellants' petition violates the purpose of section 4052 because it does not furnish the information the statute requires, i.e., the text or language of the challenged law. . . ." (*Id.* at p. 968.)

▌ The failure to attach to the referendum petition the exhibit containing the plan presents a fatal defect in this case. The resolution's focus was on the adoption of the plan and that document was incorporated into it. Without the plan individuals reviewing the petition had no way of informatively evaluating whether to sign it.

In *Billig,* the ordinance was 22 pages long. In *Chase,* the exhibit in question was a lengthy legal description of real property. In the present case, the general plan is several hundred pages long and roughly two and one-half inches thick. Given the size of a general plan, the question arises whether

---

[5]In *Chase,* the petition challenging the zoning ordinance received the required number of signatures and was placed on the ballot. Although litigation attacking the petition was filed, the trial court refused to enjoin the election and the measure passed before the appeal could be heard. While finding the appeal in that case moot, the Court of Appeal concluded the issues were likely to reoccur and proceeded to resolve them. (*Id.* at p. 662.) An appellate court may adjudicate an otherwise moot issue when it is one of general public interest and will probably arise in the future. (*Zeilenga* v. *Nelson* (1971) 4 Cal.3d 716, 719-729 [94 Cal.Rptr. 602, 484 P.2d 578]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 526, pp. 509-513.)

attaching it to a referendum petition would realistically assist someone considering whether to sign the petition.

No case has considered a document as voluminous as the plan considered here. We conclude plaintiffs were required to attach the plan to their referendum petition. This conclusion enforces the express requirements of section 4052. As *Billig* noted, the meaning of the term "text" in section 4052 is clear. By it "the Legislature intended referendum petitions must contain the exact wording of the challenged measure." (*Billig* v. *Voges, supra,* 223 Cal.App.3d at p. 967.) Here, the plan was the resolution's focal point and was expressly made a part of it. Section 4052 delineates no exception to the requirement that the petition contain the text of the challenged legislation. If the Legislature had wanted to allow an exception for bulky ordinances or resolutions it could have provided for that situation. So far the Legislature has not done so.

Our decision also enforces the statute's underlying purpose of minimizing the possibility prospective signers may misunderstand the purpose of a petition. In *Chase,* while recognizing an exhibit containing a legal description of real property would not be very helpful, the Court of Appeal stated: "In any event, it provides prospective signers with the entire text of the challenged ordinance containing the legal description, thus improving the chances prospective signers will not be confused regarding the breadth of the challenged ordinance." (*Chase* v. *Brooks, supra,* 187 Cal.App.3d at p. 664.)

Another reason for requiring the entire plan be attached to the referendum petition is the importance of a general plan. The Legislature has developed a comprehensive scheme covering its development, adoption and amendment. (See Gov. Code, § 65100 et seq.) Every city is required to prepare and adopt one. (Gov. Code, §§ 65300, 65350.) It must include a detailed discussion covering the city's land use, circulation, housing, conservation, noise and safety, along with "a statement of development policies and shall include a diagram or diagrams and text setting forth objectives, principles, standards, and plan proposals." (Gov. Code, § 65302.) Once adopted, the city's zoning ordinances must be consistent with the general plan's objectives, policies, land uses and programs. (Gov. Code, § 65860, subd. (a)(ii). See also *Lesher Communications, Inc.* v. *City of Walnut Creek* (1990) 52 Cal.3d 531, 535-536 [277 Cal.Rptr. 1, 802 P.2d 317].) Attaching the entire plan allows prospective petition signers to consider whether they are comfortable proposing the repeal of such an extensive and important document that is so expensive to prepare. As a practical matter no city can function without it. Thus, we conclude the size of the plan involved in this case did not excuse plaintiffs from compliance with the requirements of section 4052.

Plaintiffs assert copies of the plan were available at the tables where petition supporters solicited signatures. The parties presented conflicting

evidence on this issue and the trial court did not make a finding on it. But *Chase* rejected a similar claim where the petition identified only the property parcel numbers affected by the zoning reclassification. The court stated that if section 4052's "underlying purposes are to be achieved, then referencing outside material or sources within a petition must be severely limited." (*Chase* v. *Brooks, supra,* 187 Cal.App.3d at p. 664.) Furthermore, failure to attach the plan to the petition precluded Carlson from discharging her ministerial function of ascertaining whether there was compliance with section 4052's requirements. (*Billig* v. *Voges, supra,* 223 Cal.App.3d at pp. 968-969; *Myers* v. *Patterson* (1987) 196 Cal.App.3d 130, 136 [241 Cal.Rptr. 751].)

Plaintiffs complain the city failed to provide copies of the plan when requested by residents and frequently gave persons inquiring about it erroneous information on when copies of the plan would be available. Plaintiff Bonnie Streeter alleged she requested a copy of the entire resolution from the city. When she went to pick up the resolution, exhibits were not attached to it. ▇▇ ▇▇ ▀▀ ▇ Suffice it to say, when plaintiffs proceeded to circulate the amended petition, they admittedly were aware of the city's objections concerning the form of the original petition, which included the failure to attach the incorporated plan, and possessed copies of the plan.[6]

## DISPOSITION

The judgment is reversed and the matter remanded to the superior court with direction to enter a judgment denying plaintiffs' petition.

Sills, P. J., and Wallin, J., concurred.

A petition for a rehearing was denied August 27, 1993, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied October 21, 1993. Mosk, J., was of the opinion that the petition should be granted.

---

[6]Defendants' other grounds for invalidating the referendum, plaintiffs' use of a draft version of the resolution and the use of stamps to enter the dates during which signatures were obtained, are without merit.

As the trial court pointed out, the differences between the draft version of the resolution and its final version were insignificant. It was not possible the minor defects misled anyone who signed the referendum petition.

Section 44, subdivision (a) requires a referendum petition submitted to the clerk have attached a declaration signed by the person circulating it that states "in the circulator's own hand" the dates between which the petition's signatures were obtained. While the use of stamps to enter the dates violated the statute, we conclude there was substantial compliance. The apparent purpose of this requirement is to ensure all signatures were obtained during the proper time limits and to assist the clerk in determining whether those who signed the petition were registered voters. (See *Assembly* v. *Deukmejian, supra,* 30 Cal.3d at p. 653.) Here, each petition was signed by the respective circulator under penalty of perjury and nothing indicates the use of stamped dates would have impeded Carlson from carrying out her duties.