Filed 10/31/19; Certified for Publication 11/27/19 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SCOTT MOLLOY,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MICHAEL VU, as Registrar of Voters, etc., et al.,<br><br>    Defendants and Respondents;<br><br>FRANCIS J. EASON et al.,<br><br>    Real Parties in Interest and Respondents. | D075593<br><br>(Super. Ct. No. 37-2018-00056442-CU-WM-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Affirmed.

Gatzke Dillon & Ballance, Mark J. Dillon, David P. Hubbard, Kurt G. Whitman; The Sutton Law Firm, Bradley W. Hertz, James R. Sutton, Matthew C. Alvarez; Sheppard, Mullin, Richter & Hampton and John Ponder for Plaintiff and Appellant.

Thomas E. Montgomery, County Counsel, and Stephanie Karnavas, Deputy County Counsel, for Defendants and Respondents, Michael Vu and San Diego County Board of Supervisors.

Latham & Watkins, Christopher Garrett, Taiga Takahashi, Samantha K. Seikkula; Nielsen Merksamer Parrinello Gross & Leoni, Sean P. Welch and Hilary J. Gibson for Real Parties in Interest and Respondents, Francis J. Eason, Tricia Trupiano, Committee Against Newland Sierra and Bad Development, Committee Major Funding from Golden Door Properties, and Golden Door Properties, LLC.

Shute, Mihaly & Weinberger, Robert S. Perlmutter for Elfin Forest Harmony Grove Town Council, Endangered Habitats League; Cleveland National Forest Foundation, Sierra Club; Center for Biological Diversity, and Mark Jackson as Amici Curiae on behalf of Real Parties in Interest.

The San Diego County (County) Board of Supervisors approved an amendment to the County's general land use plan, which would allow for the development of over 2,100 homes in a previously designated rural area of the County. Residents opposed to the change in land use circulated a referendum petition and gathered enough signatures to have the matter placed on an election ballot. To prevent an election, the land developer filed a petition for writ of mandate in superior court, contending the referendum petition was illegal and void as a matter of law. The court denied the writ petition.

The issues presented in this appeal are (1) whether the referendum petition complied with the full text requirement under Elections Code section 9147[1] and (2) the referendum petition's legality in challenging a single legislative act even though the Board of Supervisors executed several concurrent, associated legislative acts. For reasons we explain, we affirm the trial court's decision denying the petition for writ of mandate.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Land use in the County is governed by a general plan. (Gov. Code, § 65300 et seq. ["the legislative body of each county . . . shall adopt a comprehensive, long-term general plan for the physical development of the county"].) In 2011, the County thoroughly updated its general plan, and in that process, designated certain land north of San Marcos as "rural." As part of this general plan update in 2011, the County also adopted the North County Metropolitan Subregional Plan (subregional plan). The subregional plan adopted the same land use designations as used in the general plan for implementation purposes, as follows:

"A.    the North County Metropolitan Subregional Plan, as part of the
       County General Plan, must conform to the County General Plan;
       and

---

[1]    Further unspecified statutory references are to the Elections Code.

[2]    Appellant has asserted objections to respondent's appendix, contending that the filed documents contained therein are irrelevant and unnecessary to the court's consideration of the issues on appeal. In resolving this appeal, we have disregarded any documents contained in respondent's appendix that are unnecessary to our disposition. (Cal. Rules of Court, rule 8.124(b)(3)(A).)

3

"B. the Land Use Element contains a full description of the Land Use Designations that will be used to implement each of the County's Community and Subregional plans.

"THE LAND USE DESIGNATIONS CONTAINED IN THE LAND USE ELEMENT ARE HEREBY ADOPTED BY REFERENCE AND WILL BE USED TO IMPLEMENT THIS SUBREGIONAL PLAN."

Examples of residential land use designations include "semi-rural" and "rural." Permissible housing densities under these land use designations are generically described in a chapter of the general plan entitled "Land Use Element."[3]  For instance, the land use element instructs as to rural lands, "[t]he densities provided by these designations are the lowest in the unincorporated County—ranging from one dwelling unit per 20 gross acres, to one dwelling unit per 80 gross acres—and are intended to reflect and preserve the rural agricultural, environmentally constrained, and natural 'backcountry' areas of the County (see Table LU-1)."  Under the land use element, semi-rural housing densities range from one dwelling unit per half acre to one dwelling unit per ten gross acres.

*Newland Sierra Development Project*

In 2015, Newland Sierra sought to develop a mixed-use community located on a 1,985-acre site that, once constructed, would consist of 2,135 homes, 81,000 square feet of commercial uses, a six-acre school site, 35.87 acres of public and private parks, 19.2 miles of trails, an equestrian staging area, and 1,209 acres of permanently dedicated and managed open space.  The proposed development site was on unincorporated County land, west of Interstate 15, north of San Marcos, and within "the North County

---

[3]    The portion of the general plan's land use element that discusses land use designations is approximately 13 pages in length.

4

Metropolitan Subregional Plan Area."  The proposed development would require, at minimum, a modification to the County's 2011 general plan.  Newland Sierra took steps to implement its project, including applying to the County for a general plan amendment, specific plan, and zone reclassification.

On September 26, 2018, in connection with the Newland Sierra project, the County Board of Supervisors performed three legislative acts.  The Board (1) adopted Resolution No. 18-141, approving a general plan amendment (GPA resolution); (2) adopted Resolution No. 18-142, approving a specific plan (specific plan resolution); and (3) approved Ordinance No. 10565, changing the zoning classification of the proposed development site (rezoning ordinance).

The challenged legislative act in this case is the GPA resolution.  The narrative portion of the GPA resolution is two pages long, followed by a certification page and five attached exhibits lettered A through E, all of which totals about 66 pages.  The GPA resolution adopts a general plan amendment, "PDS2015-GPA-15-001, which consists of amendments to the Land Use Element Map, Mobility Element, North County Metropolitan Subregional Plan, Bonsall Land Use Map, and the I-15 Corridor Subregional Plan *as identified in the exhibits below*:

| | |
|---|---|
| Exhibit A: | Land Use Element - Regional Category Maps |
| Exhibit B: | Land Use Element - Land Use Designations Maps |
| Exhibit C: | Mobility Element - North County Metropolitan Mobility Element Network Figure M-A-12 |
| Exhibit D: | North County Metropolitan [Subregional] Plan |
| Exhibit E: | I-15 Corridor Subregional Plan[.]" |

(Italics added.)

5

Of relevance here, exhibits A and B consist of maps showing land areas and their corresponding land use designations; compared to previous maps, exhibits A and B show less rural land (shaded green) and more semi-rural land (shaded yellow). Exhibit D is the 2011 subregional plan with amendments identified in redline, namely, a new "chapter 7" entitled "Newland Sierra Specific Plan." Within exhibit D is the unamended language from 2011 that adopted by reference the generic land use designations from the land use element of the general plan.

There was substantial public opposition to the Board of Supervisor's approval of the GPA resolution, both preceding and following the Board's action. Real parties in interest (referred to herein as Golden Door for simplicity), obtained a certified copy of the 66-page GPA resolution from the clerk of the County Board of Supervisors and, within two days of the Board's action, began circulating a referendum petition to prevent the GPA resolution from taking effect. Within 30 days of the Board's action, Golden Door submitted the referendum petition to the County Registrar of Voters with about 95,000 "projected valid" voter signatures, well exceeding the number of required signatures to have the GPA resolution placed on a ballot.[4]

---

4     The County Registrar of Voters (Registrar) verified a random sample of the collected signatures and extrapolated the results to all the signatures collected.

*Petition for Writ of Mandate*

In November 2018, Scott Molloy[5] filed a petition for writ of mandate in superior court against Michael Vu, in his capacity as Registrar, and the County Board of Supervisors, alleging six causes of action relating to Golden Door's referendum petition: (1) violation of the full text rule under section 9147, subdivision (b); (2) violation of form requirements under section 9147, subdivision (a); (3) violation of section 9147, subdivision (b) and Government Code sections 65454, 65860, and 65862 for seeking to repeal only the GPA resolution but not any associated legislative actions; (4) false and misleading tactics to deceive voters into signing the referendum petition; (5) injunctive relief; and (6) declaratory relief. Through his writ petition, Molloy sought to enjoin placement of the referendum matter on any ballot and have the referendum petition declared invalid.

Following full briefing, the trial court held a hearing on Molloy's petition for writ of mandate in December 2018. On January 9, 2019, the court entered an order denying Molloy's petition in its entirety. This appeal followed.[6]

---

[5] Molloy is a resident of and registered voter in the County. He is an employee of Newland Real Estate Group, LLC, the project management entity for Newland Sierra, LLC. Newland Sierra, LLC is the record property owner of the development site.

[6] "[A]n order granting or denying a petition for an extraordinary writ constitutes a final judgment for purposes of an appeal, even if the order is not accompanied by a separate formal judgment." (*Public Defenders' Organization v. County of Riverside* (2003) 106 Cal.App.4th 1403, 1409.)

7

DISCUSSION

I.      *Standard of Review*

The parties agree that our review is de novo because this case presents only questions of law based on undisputed facts.  (*Lin v. City of Pleasanton* (2009) 176 Cal.App.4th 408, 416 (*Lin*).)

II.     *The Full Text Requirement*

Molloy claims the referendum petition violated the full text requirement under section 9147, subdivision (b) because it did not include the land use designation descriptions from the land use element of the general plan in addition to the challenged 66-page GPA resolution, which was included.

Section 9147, subdivision (b) states:  "Each section of the referendum petition shall contain the title and text of the ordinance or the portion of the ordinance which is the subject of the referendum."[7]  Interpretive case law has held that a valid referendum petition must contain the full, complete text of the challenged legislation, including documents and exhibits physically attached to the challenged law.  (E.g., *Nelson, supra,* 17 Cal.App.4th at p. 740 [analyzing similarly worded provision of Elections Code in the context of a city council resolution]; accord, *Billig v. Voges* (1990) 223 Cal.App.3d 962, 967 [petition must contain "the [challenged] measure's actual words"].)

---

[7]     The statute applies to resolutions as well as ordinances because both are legislative acts subject to the referendum process.  (*Nelson v. Carlson* (1993) 17 Cal.App.4th 732, 737 fn. 4 (*Nelson*); *Midway Orchards v. County of Butte* (1990) 220 Cal.App.3d 765, 773-781 (*Midway Orchards*) [although Elections Code provisions governing referendum petitions refer only to "ordinances," these statutes apply equally to resolutions amending a general plan].)

8

In addition, a valid referendum petition must contain documents expressly incorporated by reference into the challenged legislation when the incorporated document is the subject of the referendum. (*Nelson, supra*, 17 Cal.App.4th at p. 735 [resolution adopting general plan stated that the " 'Plan is detailed in Exhibit "B" attached hereto and incorporated herein by this reference' "]; *id.* at p. 740 [concluding plaintiffs were required to attach the voluminous Exhibit B to referendum petition].) "[W]hen a central purpose of the [challenged] ordinance is to adopt and enact into law the contents of an incorporated or attached document, a referendum petition on the ordinance does not satisfy [the] Elections Code . . . unless it includes a copy of that document." (*Defend Bayview Hunters Point Com. v. City & County of San Francisco* (2008) 167 Cal.App.4th 846, 858 (*Defend Bayview*); see also *Wilson v. County of Napa* (2017) 9 Cal.App.5th 178 [because proposed measure required compliance with new best management practices "set forth in Appendix D," the management practices were required to be included with petition].)

However, the "text" of a challenged law does not include documents referenced within the law but not physically attached or specifically incorporated by reference. (*Lin*, *supra*, 176 Cal.App.4th at p. 417.) The Elections Code requires "the 'text' of the ordinance being challenged, not the inclusion of additional information a conscientious voter might want to know before signing the petition." (*Ibid*.; *We Care-Santa Paula v. Herrera* (2006) 139 Cal.App.4th 387, 390-391 (*We Care*) [initiative to amend general plan land use element was not required to attach any portion of the general plan].)

9

*Lin* is instructive on the parameters of the full text requirement. (*Lin*, *supra*, 176 Cal.App.4th at p. 417.) There, the challenged ordinance (Ordinance No. 1961) approved a development plan in the city of Pleasanton. (*Id.* at p. 414.) "[F]or whatever reason, Ordinance No. 1961 did not include the Development Plan it approved, nor did it incorporate that plan by reference or attach it as an exhibit." (*Id.* at p. 419.) The *Lin* court concluded the subsequent referendum petition was not required to attach the development plan. (*Id.* at pp. 417-418.) Finding that the text of the ordinance itself was not misleading, the Court of Appeal was persuaded that a clear, objective rule protected a citizen's right of referendum and guided clerks in the performance of their ministerial duties. (*Id.* at pp. 419-421.)

Applying the foregoing principles, we conclude the referendum petition in this case satisfied the full text requirement and was not required to include the land use designations from the land use element of the general plan.

It is undisputed the referendum petition contained the complete 66-page GPA resolution, including exhibits A through E. The GPA resolution amended portions of the general plan *as identified* in the exhibits. As we have noted, the exhibits were included in the referendum petition. There is nothing ostensibly misleading about the text of the GPA resolution itself, which informed voters of the amendments being made to the general plan in connection with the Newland Sierra project. Subdivision (b) of section 9147 did not require the inclusion of any additional documents in the referendum petition.

10

To support his argument that the land use designations were required to be included in the referendum petition, Molloy relies on language contained in the subregional plan—in exhibit D—stating that the subregional plan "adopted by reference" the land use designations from the general plan. However, the specified language was approved by the Board of Supervisors in *2011* when the County updated its general plan and is contained in an entirely different, earlier chapter (entitled policies) than the newly added chapter 7 relating to the Newland Sierra specific plan. The language of the 2018 GPA resolution does not expressly incorporate by reference the land use designations nor was a "central purpose" of the GPA resolution to adopt, amend, or enact into law the generic land use designations, which had long been in force and would continue to be in force regardless of the outcome of any referendum petition.[8] (Cf. *Defend Bayview*, *supra*, 167 Cal.App.4th at p. 858.)

Molloy argues that the amended land use element maps (exhibits A and B) cannot be properly understood without reference to the land use designations, i.e., voters should be informed on what it means for land to be designated "rural" or "semi-rural" before signing a referendum petition on the matter. It may well be the case that a voter should review the land use designations. We can easily hypothesize an argument wherein voters

---

[8] Even assuming the GPA resolution somehow incorporated by reference the land use designations, we would still not conclude the land use designations are part of the "text" of the GPA resolution for purposes of section 9147. We have no doubt the GPA resolution derives meaning from the promulgated land use designations, as does every document and map that relies on those same designations for meaning. The land use designations may inform or dictate the meaning of the GPA resolution but still not be a part of the resolution's "text." (*Lin*, *supra*, 176 Cal.App.4th at p. 422.)

should be provided with an array of additional land use planning documents prior to signing the petition.[9]  However, for all the reasons discussed in *Lin,* the "text" requirement does not compel "the inclusion of additional information a conscientious voter might want to know before signing the petition."  (*Lin*, *supra*, 176 Cal.App.4th at p. 417; see also *We Care*, *supra*, 139 Cal.App.4th at p. 391 [Elections Code "does not require an initiative petition to contain all the information an informed voter would want. It requires only the text of the measure proposed to be enacted"].)

Notably, decisional law has repeatedly held that requiring the complete text of the protested legislation in a referendum petition—and nothing more—reasonably balances the goal of adequately apprising voters of the protested law with a citizen's right of referendum.  (*Creighton v. Reviczky* (1985) 171 Cal.App.3d 1225, 1231-1232; *Lin*, *supra*, 176 Cal.App.4th at p. 420.)  "If a voter requires additional information about the effects of the [law] at issue, he or she can seek it out before deciding whether to sign a referendum petition."  (*Lin*, at p. 420.)  An objective rule ensures that referenda proponents have fair notice of a petition's required contents so that they may exercise their constitutional right of referendum.  (*Ibid*.; see also Cal. Const. art. II, § 11 ["referendum powers may be exercised by the electors of each city or county under procedures that the Legislature shall provide"].)

---

9      Indeed, before the trial court, Molloy argued that the nearly 300-page specific plan was required to be included in the referendum petition.  He has not repeated this argument on appeal.

12

In summary, the purpose of the full text requirement is "to make sure that prospective signers have adequate information about the substance of a proposed [law] to make an informed decision about whether to sign the referendum petition." (*Defend Bayview*, *supra*, 167 Cal.App.4th at p. 858.) "In all but the most extreme situations, this purpose is fulfilled by construing the 'text' to include the language of the ordinance itself, plus any documents attached as exhibits or expressly incorporated by reference." (*Lin*, *supra*, 176 Cal.App.4th at p. 419.) The referendum petition in this case complied with the full text requirement.[10]

III.   *Legality of Challenging One Legislative Act*

The parties agree the County Board of Supervisors completed at least three concurrent associated legislative acts in connection with the Newland Sierra project: (1) it adopted the GPA resolution, which would have taken effect 30 days after its adoption except for the referendum petition; (2) the Board adopted the specific plan resolution, which states that its effectiveness occurs 30 days after its adoption provided that on that date, the GPA resolution, rezoning ordinance, and certain other documents are approved; and (3) the Board passed the rezoning ordinance to provide for zoning to support the development project, but the ordinance is not conditioned on the effectiveness of any other legislation and states that it "shall take effect and be in force thirty (30) days after the date of its passage . . . ."

---

[10]   Given our resolution of this issue, we have no need to discuss the substantial compliance doctrine.

13

Molloy claims the referendum petition is legally invalid because it only challenged the GPA resolution and not the two other associated legislative acts. He argues that, if the subject referendum petition is successful, it will "create inconsistencies" between the general plan, on the one hand, and the specific plan and rezoning ordinance, on the other.

In response, Golden Door argues that a general plan amendment can be challenged on its own even if it results in a temporary inconsistency with subordinate land use approvals, and in any event, there is no inconsistency due to the conditional language of the subordinate approvals and/or the operation of relevant law, which renders the subordinate approvals void *ab initio*.

Molloy cites no authority, statutory or otherwise, to support the proposition that a referendum petition must challenge three associated but distinct legislative acts together. We have not located any such requirement in the Elections Code. His reliance on *City of Morgan Hill v. Bushey* (2018) 5 Cal.5th 1068 (*Bushey*), is unavailing. In *Bushey*, the city amended its general plan to change the land use designation of a vacant parcel from "Industrial" to "Commercial." The parcel's zoning designation of "ML-Light Industrial" was not concurrently changed. Later, the city council amended the zoning ordinance to change the parcel's designation to be "CG-General Commercial," which conformed the zoning to the amended general plan and allowed for construction of a hotel. A referendum petition challenged *only* the ordinance change. (*Id.* at pp. 1076-1077.) The California Supreme Court upheld the referendum petition even though a successful referendum would make the zoning temporarily inconsistent with the city's general plan. (*Id.* at p. 1080.)

14

Critically, our high court rejected the notion that the right of referendum should be restricted in some way to prevent an inconsistency between the general plan and zoning ordinance. (*Bushey, supra,* 5 Cal.5th at p. 1084.) Electors were not required to "challenge[] the prior alterations to the general plan by referendum, or change[] the general plan or the zoning ordinance by initiative . . . ." (*Ibid.*) The court discussed how "electors may agree with a general plan modification, but not the particular zoning amendment used to conform to the general plan. So the ability to bring a referendum to challenge a general plan amendment may not always make up for the lack of availability of a referendum challenging a later, more specific zoning ordinance amendment." (*Ibid.*)

*Bushey* also reinforces the principle that "[w]hile a given general plan is in effect, neither local governments nor electors can enact a zoning ordinance inconsistent with it. [Government Code] [s]ection 65860, subdivision (a) provides that '[c]ounty or city zoning ordinances shall be consistent with the general plan of the county or city. . . .' (§ 65860, subd. (a).)" (*Bushey*, *supra*, 5 Cal.5th at p. 1079.) Operationally, a referendum "rejects a statutory alteration before it becomes law" (*id.* at p. 1082) and "suspends the effective date of the challenged . . . amendment until a majority of voters approve the amendment" (*id.* at p. 1084; § 9145).

In this case, for whatever reason proponents of the referendum petition chose to challenge only the GPA resolution. Adopting or amending a general plan is a quintessential legislative act, subject to referendum. (*Yost v. Thomas* (1984) 36 Cal.3d 561, 570-571 (*Yost*) [adopting or amending general plan, rezoning land, and adopting specific plan, is each a legislative act subject to referendum].) As alluded to in *Bushey*,

15

there are reasons why electors may wish to protest one legislative act and not some other associated legislative act or acts that may or may not produce the same result. Adhering to our policy of liberally construing referendum petitions in favor of their sufficiency, we conclude it was an acceptable course of action for proponents to challenge only the GPA resolution through referendum. (See *Associated Home Builders etc., Inc. v. City of Livermore* (1976) 18 Cal.3d 582, 591 [" '(I)t has long been our judicial policy to apply a liberal construction to [initiative and referendum] power wherever it is challenged in order that the right be not improperly annulled. If doubts can reasonably be resolved in favor of the use of this reserve power, courts will preserve it.' "].)

We need not definitively resolve, at this juncture, the legal status of the rezoning ordinance and specific plan, which is the subject of litigation in another pending lawsuit.[11] If the subordinate approvals conflict with the general plan, "some way out of the impasse will have to be found." (*Yost*, *supra*, 36 Cal.3d at p. 574.) Suffice to say, "[b]ecause of its broad scope, long-range perspective, and primacy over subsidiary land use decisions, the 'general plan has been aptly described as the "constitution for all future developments" within the city or county.' " (*Orange Citizens for Parks & Recreation v. Superior Court* (2016) 2 Cal.5th 141, 152.) " '[T]he propriety of virtually any local decision affecting land use and development depends upon consistency with the

---

[11]    See *California Native Plant Society v. County of San Diego*, San Diego Superior Court case No. 37-2018-00054559-CU-TT-CTL, consolidated with *Golden Door Properties, LLC v. County of San Diego*, San Diego Superior Court case No. 37-2018-00030460-CU-TT-CTL.

16

applicable general plan and its elements.' " (*Citizens of Goleta Valley v. Board of Supervisors* (1990) 52 Cal.3d 553, 570.)

The answer may be, as Golden Door contends, that the specific plan resolution and rezoning ordinance were void *ab initio* because their adoption was neither conditioned on the effectiveness of the GPA resolution nor consistent with the general plan in effect at the time. (See, e.g., Gov. Code, §§ 65454, 65860; *Bushey*, *supra*, 5 Cal.5th at p. 1082; *Lesher Communications, Inc. v. City of Walnut Creek* (1990) 52 Cal.3d 531, 541 ["A zoning ordinance that is inconsistent with the general plan is invalid when passed"]; *Midway Orchards, supra,* 220 Cal.App.3d at p. 783 [board was without authority to approve a development agreement that was never consistent with effective general plan].) Regardless, the referendum petition is not invalid for challenging only the GPA resolution.

## DISPOSITION

The judgment is affirmed. Respondents are awarded costs on appeal.


O'ROURKE, J.

WE CONCUR:


BENKE, Acting P. J.


DATO, J.

17

Filed 11/27/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SCOTT MOLLOY, | D075593 |
|     Plaintiff and Appellant, | |
|     v. | (Super. Ct. No. 37-2018-00056442-CU-WM-CTL) |
| MICHAEL VU, as Registrar of Voters, etc., et al., | |
|     Defendants and Respondents; | ORDER GRANTING REQUEST FOR PUBLICATION |
| FRANCIS J. EASON et al., | |
|     Real Parties in Interest and Respondents. | |

THE COURT:

The opinion in this case filed October 31, 2019, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request(s) pursuant to rule 8.1120(a) for publication is/are GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

BENKE, Acting P. J.

Copies to: All parties