[No. A121147. First Dist., Div. Five. July 16, 2009.]

JENNIFER LIN et al., Plaintiffs and Respondents, v.
CITY OF PLEASANTON, Defendant and Respondent;
KAY AYALA, Real Party in Interest and Appellant.

410

COUNSEL

Manatt, Phelps & Phillips, Benjamin G. Shatz, Christopher D. LeGras and Camas J. Steinmetz for Real Party in Interest and Appellant.

Cox, Castle & Nicholson, Andrew B. Sabey, R. Clark Morrison and Bradley B. Brownlow for Plaintiffs and Respondents.

No appearance for Defendant and Respondent.

OPINION

**NEEDHAM, J.**—Defendant the City of Pleasanton enacted an ordinance approving a proposed 51-unit residential development on land owned by plaintiffs Jennifer and Frederic Lin. Real party in interest Kay Ayala, a former city councilperson and member of an unincorporated association operating

under the name "Save Pleasanton's Hills," gathered the number of voter signatures necessary to hold a referendum on the ordinance. (Elec. Code, § 9236, subd. (b).)[1] The superior court granted the Lins' petition for a writ of mandate directing the city clerk to refrain from certifying the referendum petition based on its failure to comply with the "text" requirement of section 9238, subdivision (b). It granted in part Ayala's motion to strike the writ petition as a "SLAPP" (strategic lawsuit against public participation; Code Civ. Proc., § 425.16), but denied her request for attorney fees on that motion.

In this appeal, Ayala contends (1) the writ petition should have been denied in its entirety because the issues it presented were not ripe for review; (2) the court erred when it issued the writ based on the referendum petition's failure to include documents that were referred to in the challenged ordinance but were neither attached as exhibits nor incorporated by reference; (3) the court should have granted the anti-SLAPP motion as to additional causes of action; and (4) the court should have awarded her costs and attorney fees as a prevailing party on the anti-SLAPP motion. We agree that the trial court erred in its interpretation of the "text" requirement of section 9238, subdivision (b) and reverse the order granting the writ petition. We affirm the court's ruling on the anti-SLAPP motion, but remand the case for a redetermination of Ayala's entitlement to costs and attorney fees.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

The Lins own approximately 562 acres of land in the City of Pleasanton. In 1992, the city approved a 122-unit development on the Lin property that included an 18-hole golf course. This approval was rescinded in a referendum election held November 2, 1993.

In November of 2003, approval of a planned unit development (PUD) was sought by the Lins' agents, James Tong and Charter Properties. The originally proposed plan, which was to be known as "Oak Grove" and was designated PUD-33, consisted of 98 residential units on approximately 80 acres of the Lins' 562-acre parcel, with the remaining land to be dedicated to the city for open space and recreational uses. The proposed development plan included a number of documents detailing the particulars of the intended project: an aerial overview, a topographic map, a grading plan, a slope map, a site development profile showing proposed elevations, a tree report, a geological and geotechnical report, landscape guidelines and residence design guidelines.

The city commissioned a draft environmental impact report (EIR) as required by the California Environmental Quality Act, Public Resources Code

---

[1] Further statutory references are to the Elections Code unless otherwise indicated.

section 21000 et seq. (CEQA). The report considered four alternative plans. Following the period for public comment and a public hearing that concluded in October 2007, the city adopted resolutions certifying that the EIR was adequate and complete, adopting the CEQA findings, and approving the "Mitigation Monitoring and Implementation Plan for the Oak Grove Planned Unit Development" (MMIP). The CEQA findings determined that a 51-unit alternative considered in the EIR (alternative 4) was the preferred project.

The city adopted ordinance No. 1961, "An Ordinance Approving the Application of James Tong, Charter Properties (Oak Grove Development), for PUD Development Plan Approval, As Filed Under Case PUD-33." It also adopted companion ordinance No. 1962, "An Ordinance Approving a Development Agreement Between the City of Pleasanton and Jennifer Lin and Frederic Lin Regarding the Oak Grove Development." Ordinance No. 1962 provided that it would be of no force or effect if ordinance No. 1961 were set aside by referendum.

Ordinance No. 1961, which approved the development plan, contained two exhibits, each of which was specifically incorporated by reference into the ordinance itself: a 45-page document entitled "Environmental Findings and Statement of Overriding Considerations" attached as exhibit A, and a 39-page document entitled "Final Conditions of Approval PUD-33, Oak Grove Development/Lin Property," attached as exhibit B. The development *agreement* that was the subject of ordinance No. 1962, was attached to the final conditions of approval as exhibit D to that document. The development *plan* that was approved by ordinance No. 1961 was referred to in that ordinance and in its exhibits, but it was not attached or incorporated by reference.[2]

Following the adoption of ordinances Nos. 1961 and 1962, Ayala circulated a referendum petition entitled "Referendum Against An Ordinance Passed by The City Council: Ordinance No. 1961 Approving the Application of James Tong, Charter Properties (Oak Grove Development), for PUD Plan Approval, as Filed Under Case PUD-33." The petition was comprised of a copy of ordinance No. 1961, the CEQA findings attached to and incorporated into that ordinance as exhibit A, the conditions of approval attached to and incorporated into that ordinance as exhibit B, and the development agreement attached to the conditions of approval as exhibit D. The referendum petition did not contain a copy of the development plan. Appellant obtained more than

---

[2] Paragraph 12.11 of the development agreement (exhibit D to exhibit B of ord. No. 1961) provided, "The following exhibits are attached to this Agreement and incorporated herein for all purposes: A-1, A-2, A-3 and B." Elsewhere in the development agreement, exhibit A-3 is described as the "Oak Grove Planned Unit Development Plan." However, the actual exhibit A-3 attached to the agreement is a single page diagram of the development site, not the development plan.

the requisite amount of voter signatures and submitted the petition to the city clerk, who certified it for filing.

The Lins filed a petition for writ of mandate directing the city clerk to declare the referendum petition invalid. Ayala was named as the real party in interest. (Code Civ. Proc., § 1085.) The first cause of action alleged that the referendum petition violated section 9238 because it did not contain the full text of ordinance No. 1961. The second cause of action alleged that the petition violated section 9238 because it did not advise voters that the repeal of ordinance No. 1962 would be of no force and effect if ordinance No. 1961 were invalidated. The third cause of action alleged that information distributed to voters and available on the Web site for Save Pleasanton's Hills was false and misleading under section 18600. The fourth cause of action sought declaratory relief based on the theories alleged in the first three causes of action.

Ayala filed a demurrer to the petition arguing that it failed to state a cause of action, along with an anti-SLAPP motion under Code of Civil Procedure section 425.16. After holding a combined hearing on the petition for writ of mandate, the demurrer and the anti-SLAPP motion, the trial court issued a written order granting the Lins' petition for writ of mandate based on the first cause of action: "The Petition is GRANTED as to the First Cause of Action, which alleges noncompliance with the requirement found in California Elections Code section 9238(b) that the 'full text' of any ordinance sought to be repealed by referendum petition be attached to the referendum petition itself. The requirements of section 9238(b) are construed strictly, and when in doubt, ambiguities should be resolved with an eye to protecting the electorate from confusing or misleading information and to guarantee the integrity of the electoral process. [Citations.] [¶] While the referendum petition of Defendant Ayala did not have to attach the entire Development Plan to achieve technical compliance with section 9238 (as the Development Plan was not expressly incorporated by reference), the failure to include at least some portion of the Development Plan and/or exhibits thereto frustrates the purpose of section 9238, which is to ensure that members of the electorate are adequately informed so that they can intelligently exercise their rights. [Citation.] The Final Conditions of Approval, which were attached to the Petition as Exhibit B and which modify the Development Plan, are meaningless and potentially misleading without including at least some portions of the Development Plan. [Citations.] [¶] The Final Conditions of Approval modify the terms of the Development Plan, including, for example, construction of mitigation measures[,] specific design guidelines such as maximum house heights, building floor measures, maximum grading slopes, placement of side drives in setback areas[,] and design review procedures. (See Referendum Petition, Ex. B at p. 7-16.) In addition, the Final Conditions of Approval

impose numerous conditions on specific lots. These modifications and conditions are rendered meaningless, and/or are potentially misleading, without the relevant portions of the referendum petition and a map indicating the location of each lot. [¶] The information in the referendum petition thus does not accurately inform voters of the contents of the Ordinance sought to be invalidated. [Citation.] Referencing outside sources that are available for review elsewhere does not cure the potentially misleading nature of the referendum as presented. [Citation]."

The court sustained Ayala's demurrer as to the second and third causes of action. It granted her anti-SLAPP motion as to the third cause of action based on misrepresentation, denied that motion as to the other causes of action, and declined to award Ayala attorney fees. Ayala appeals, challenging the granting of the writ petition on the first cause of action, the court's denial of her anti-SLAPP motion as to the second and third causes of action, and the court's denial of attorney fees on her anti-SLAPP motion.

## II. DISCUSSION

### A. Sufficiency of Referendum Petition

The trial court granted the petition for a writ of mandate because it concluded the referendum petition should have contained at least a portion of the development plan approved by ordinance No. 1961. Ayala contends it was not necessary for her to include the development plan in the referendum petition because it was not part of the "text" of the ordinance. Because this issue is one of law based on undisputed material facts, we review the trial court's decision de novo. (*Defend Bayview Hunters Point Com. v. City and County of San Francisco* (2008) 167 Cal.App.4th 846, 851 [84 Cal.Rptr.3d 486] (*Defend Bayview*).)

■ Article II, section 11 of the California Constitution empowers the Legislature to establish procedures governing municipal referenda. (See *Mapstead v. Anchundo* (1998) 63 Cal.App.4th 246, 256 [73 Cal.Rptr.2d 602].) When the requisite number of registered voters signs a valid petition for a referendum on a local ordinance, the legislative body that passed the ordinance against which the referendum is filed must either repeal it or place the referendum on the ballot for the voters to determine. (§§ 9237, 9241.)

■ Section 9238 establishes the required contents of a referendum petition challenging a municipal ordinance. Subdivision (b) of section 9238 provides, "Each section of the referendum petition shall contain (1) the identifying number or title, and (2) the text of the ordinance or the portion of the ordinance that is the subject of the referendum." The purpose of these

requirements is to "reduce confusion as to the contents of referendum petitions in the minds of electors." (*Billig v. Voges* (1990) 223 Cal.App.3d 962, 966 [273 Cal.Rptr. 91] (*Billig*).) A city clerk has a ministerial duty to reject a petition that violates section 9238, subdivision (b). (*Defend Bayview, supra,* 167 Cal.App.4th at p. 858.)

■ Case law has interpreted the "text" requirement of section 9238, subdivision (b)(2) to include the words of the ordinance itself and documents that are physically attached as exhibits or incorporated by reference. In *Billig, supra,* 223 Cal.App.3d at page 964, the court upheld the rejection of a referendum petition that included the city attorney's summary of the rezoning ordinance being challenged, but omitted a portion of the ordinance and two exhibits "which comprise[d] the major portion of the ordinance." In *Chase v. Brooks* (1986) 187 Cal.App.3d 657, 660, 664 [232 Cal.Rptr. 65], a referendum petition was found defective when it did not include an exhibit to the challenged ordinance that set forth the legal description of the affected real property. In *Nelson v. Carlson* (1993) 17 Cal.App.4th 732, 735–736 [21 Cal.Rptr.2d 485], a referendum petition challenging the adoption of a land use plan through a resolution by the city council violated the text requirement because it did not include a copy of the general plan that was attached to the resolution and expressly incorporated by reference. And in *Defend Bayview, supra,* 167 Cal.App.4th at pages 849, 856–858, a referendum petition was properly rejected where it did not include the redevelopment plan that was adopted by the challenged ordinance and expressly incorporated by reference.

■ The referendum petition at issue in this case contained (1) the text of ordinance No. 1961; (2) the two exhibits that were attached to and incorporated by reference into that ordinance; and (3) an exhibit to one of the two exhibits incorporated by reference into the ordinance. No documents that were attached or specifically incorporated into the ordinance were omitted. The referendum petition satisfied the plain language of section 9238, subdivision (b)(2).

The Lins argue the referendum petition was defective because it did not contain a copy of the development plan that was adopted by ordinance No. 1961. We disagree. The development plan was not included in the text of that ordinance, was not attached as an exhibit, and was not expressly incorporated by reference. It may well be the case that an informed voter would prefer to review portions of the development plan before determining whether to sign a referendum petition that could ultimately result in that plan's being set aside. But section 9238, subdivision (b)(2) requires the "text" of the ordinance being challenged, not the inclusion of additional information a conscientious voter might want to know before signing the petition. (See *We Care—Santa Paula v. Herrera* (2006) 139 Cal.App.4th 387, 391 [42

Cal.Rptr.3d 577] (*We Care*) [petition for initiative amending general plan to require voter approval of certain measures affecting land use density required only full text of measure being enacted, not full text of general plan].)

The decision in *Mervyn's v. Reyes* (1998) 69 Cal.App.4th 93 [81 Cal.Rptr.2d 148] (*Mervyn's*) does not require a different result. In *Mervyn's*, the City of Hayward had adopted a general plan changing the designation of real property owned by a department store to open space, parks and recreation. A few years later, an initiative petition was circulated to " 're-enact the open space land use designations (Parks and Recreation, Baylands, Limited Open Space) of the General Policies Plan Map and the supporting policies . . . in effect on January 1, 1996.' " (*Id.* at pp. 96–97.) The initiative did not include the text of the portion of the general plan that was being reenacted— essentially, the voters were asked to sign a petition that did not include the substance of the law that would go into effect if the initiative were passed. (*Ibid.*) Noting that an initiative petition, similar to a referendum, must contain the text of the measure being enacted pursuant to section 9201, the court concluded that the "text of the measure" in that case included the 17 pages of the general plan that were affected by the measure. (*Mervyn's*, at pp. 99, 104.) The initiative petition was defective because it did not include those 17 pages.

We do not interpret the *Mervyn's* decision to mean that a petition for initiative or referendum must include the text of all laws potentially affected by the proposed measure. That proposition was specifically disavowed in *We Care, supra*, 139 Cal.App.4th at pages 390–391. Nor do we agree with the trial court's conclusion in this case that the development plan approved by ordinance No. 1961 is analogous to the portions of the general plan that were deemed to be a part of the text of the initiative in *Mervyn's*.

In *Mervyn's*, the initiative's proponents sought to reenact portions of the city's general plan that were in effect as of a certain date. The "measure" thus consisted of those portions of the general plan. Because the initiative petition referred to the portions of the general plan that were being reenacted by their title only, it did not contain the full text of the measure at issue and voters reading the petition would not have known the substance of the law whose enactment was sought. (*Mervyn's, supra*, 69 Cal.App.4th at pp. 96–97.) In the present case, by contrast, the referendum petition advised voters of the *precise* language of the ordinance being challenged and its attached exhibits.

■ We find it significant, though not dispositive, that *Mervyn's* involved an initiative rather than a referendum petition. Although "[t]he purpose and function of the initiative and referendum are identical" in the sense that both provide a vehicle for voters to directly challenge local land use decisions

(*Mervyn's, supra,* 69 Cal.App.4th at p. 100; see also *id.* at p. 101), they approach this task from opposite directions. An initiative is drafted by its proponents and is the very law whose enactment is sought, whereas a referendum seeks to set aside a law that has been drafted by others. (See §§ 9201, 9214, 9215, 9235–9241.)

The court in *Mervyn's* quite reasonably required the drafters of an initiative designed to reenact portions of a general plan to include in the initiative petition that portion of the general plan that was being reenacted. By contrast, the proponents of a referendum petition are required by statute to include the text of the ordinance being challenged and are thus constrained by language drafted by others. (§ 9238.) In this case, for whatever reason, ordinance No. 1961 did not include the development plan it approved, nor did it incorporate that plan by reference or attach it as an exhibit. Ayala had no direct control over the drafting of the ordinance and it would place an unreasonable burden on her and on other referenda proponents to determine whether additional documents that were neither included nor incorporated by reference ought to be included in the referendum petition.

■ The text requirement of section 9238 is designed to reduce voter confusion regarding the content of a referendum to a "practical minimum." (*Creighton v. Reviczky* (1985) 171 Cal.App.3d 1225, 1231 [217 Cal.Rptr. 834] [interpreting former § 4052].) In all but the most extreme situations, this purpose is fulfilled by construing the "text" to include the language of the ordinance itself, plus any documents attached as exhibits or expressly incorporated by reference. Though it is possible to hypothesize a case in which the content of a local ordinance would be so sparse as to be intelligible only when read with documents falling outside this definition of "text" (i.e., "The City hereby approves the development plan for property owned by Jane Doe—period"), more is not required in a referendum petition unless the text as so defined would be affirmatively misleading. (See, e.g., *Hebard v. Bybee* (1998) 65 Cal.App.4th 1331, 1334–1340 [77 Cal.Rptr.2d 352] (*Hebard*) [referendum petition defective where it misstated title of challenged zoning ordinance in a manner that made it unclear how much land was affected and how zoning would be changed].)

Here, the text of the ordinance itself was not misleading. While it did not include the development plan, the ordinance and accompanying exhibits advised voters that the project at issue was a 51-unit residential development on 562 acres. These materials described the location and nature of the site, the history of the proposed development, the environmental review that had been conducted, the mitigation measures that would be implemented and a number of other details about the property and proposed project. Some voters

might have wanted additional information contained in the development plan itself, but there was nothing misleading about the information that was provided.[3]

■ We therefore conclude that barring extreme circumstances not presented by this case, section 9238, subdivision (b)(2) does not require a referendum petition to include documents that were neither attached to the challenged ordinance nor expressly incorporated by reference. The right to referendum is a "precious" one (*Rossi v. Brown* (1995) 9 Cal.4th 688, 695 [38 Cal.Rptr.2d 363, 889 P.2d 557]), and citizens wishing to exercise this right should not be required to guess at the documents to be included in a referendum petition. Limiting the "text" requirement of section 9238 to the words of the challenged ordinance and those documents attached to it or incorporated by reference provides citizens circulating a referendum petition with fair notice of its required contents and insures that voters presented with the petition will know the language of the ordinance being challenged. This strikes a reasonable balance between a citizen's right to circulate a referendum petition and the voters' interest in being adequately apprised of the issue presented. If a voter requires additional information about the effects of the ordinance at issue, he or she can seek it out before deciding whether to sign a referendum petition. (See *We Care, supra,* 139 Cal.App.4th at pp. 390–391.)[4]

■ Our interpretation of the text requirement also ensures that city and county clerks charged with certifying referendum petitions will not be called upon to make quasi-judicial evaluations of a petition's validity. In certifying a referendum petition, a clerk's duty is limited to the ministerial function of determining whether the procedural requirements have been met. (*Billig, supra,* 223 Cal.App.3d at pp. 968–969.) This duty includes a determination of whether the petition includes the "text" of the ordinance challenged. (*Ibid.*)

---

[3] Our observation that the referendum petition was not misleading as to the content of the ordinance should not be construed as a foray into the area of "substantial compliance." Though a referendum petition that does not meet the technical requirements of section 9238 may be upheld if it substantially complies and does not thwart the statutory purpose, here there was literal compliance with section 9238. It is therefore unnecessary to consider whether the petition substantially complied with the statute. (See *Hebard, supra,* 65 Cal.App.4th at pp. 1338–1339 [engaging in substantial compliance analysis after determining petition was not in technical compliance].)

[4] While we construe the text requirement of section 9238 to ordinarily extend no further than documents that are either attached as an exhibit to the challenged ordinance or incorporated by reference, this does not mean, conversely, that *all* such documents must be a part of a referendum petition. In *Defend Bayview, supra,* 167 Cal.App.4th at page 858, the court emphasized, "We do not hold here that all documents a local legislative body chooses to incorporate by reference in or attach to an ordinance must be included in a referendum petition. We hold only that when a central purpose of the ordinance is to adopt and enact into law the contents of an incorporated or attached document, a referendum petition on the ordinance does not satisfy Elections Code section 9238 unless it includes a copy of that document."

Were we to construe the text requirement to include documents that were neither attached to nor expressly incorporated into the ordinance itself, the ministerial duty of checking the text could too easily be transformed into a discretionary act exceeding the "straightforward comparison of the submitted petition with the statutory requirements for petitions" that is authorized by law. (*Alliance for a Better Downtown Millbrae v. Wade* (2003) 108 Cal.App.4th 123, 133 [133 Cal.Rptr.2d 249].)

In their petition for rehearing, the Lins argue for the first time that the development plan *was* incorporated by reference into ordinance No. 1961 based on the following language in that ordinance: "NOW, THEREFORE, THE CITY COUNCIL OF THE CITY OF PLEASANTON DOES HEREBY ORDAIN AS FOLLOWS: . . . . [¶] . . . [¶] SECTION 2. Approves Case PUD-33, the application of James Tong, Charter Properties, for Planned Unit Development (PUD) development plan approval . . . subject to the conditions shown on Exhibit B, attached here and incorporated herein by this reference." This language explicitly incorporated into the ordinance exhibit B, the Final Conditions of Approval, but did not explicitly incorporate the development plan itself. The Lins argue that notwithstanding the lack of an explicit incorporation of the development plan, the reference to the plan made it an integral part of the ordinance.

In support of their argument, the Lins cite a number of cases for the proposition that a document or statute may incorporate another even when the exact phrase "incorporates by reference" is not used. None addresses the issue of incorporation by reference in a context similar to the one before us. Most involve the interpretation of an ordinance or statute that expressly refers to another statute or ordinance. (See, e.g., *Tosh v. California Coastal Com.* (1979) 99 Cal.App.3d 388, 395–396 [160 Cal.Rptr. 170] [Monterey County ordinance requiring a permit for all types of work specified in a Uniform Building Code provision incorporated by reference that building code provision]; *City and County of San Francisco v. Carpenter Funds Admin. Office* (1984) 162 Cal.App.3d 896, 900 [208 Cal.Rptr. 824] [local ordinance that imposed a payroll tax on certain employers but provided an exemption for any " 'organization described in Section 501(c) or 501(d) or 401(a) of Title 26 of the United States Code' " incorporated those federal provisions by reference]; *Mar v. Sakti Internat. Corp.* (1992) 9 Cal.App.4th 1780, 1783–1784 [12 Cal.Rptr.2d 388] [Code Civ. Proc., § 387, subd. (b), which requires a court to allow intervention " '[i]f any provision of law confers an unconditional right to intervene . . .' " incorporated by reference Lab. Code, § 3853, which grants employers the right to become a party to a lawsuit by an injured employee against a third party]; *In re Cox* (1970) 3 Cal.3d 205, 209 [90 Cal.Rptr. 24, 474 P.2d 992] [trespassing ordinance that stated it would not apply when its application would result in an act prohibited by the Unruh Civil Rights Act "incorporate[d]" the Unruh Civil Right Act].) Others cases cited by the Lins

involve the interpretation of a contract, deed, or pleading that refers to another document. (See *Shaw v. Regents of University of California* (1997) 58 Cal.App.4th 44, 54 [67 Cal.Rptr.2d 850] ["Patent Agreement" signed by university professor incorporated the royalty provisions of the university policy regarding patents, which was referred to in the Patent Agreement and set forth on the back of the form]; *Mecchi v. Picchi* (1966) 245 Cal.App.2d 470, 479 [54 Cal.Rptr. 1] [probate court should have considered affidavit by a decedent regarding the disposition of property as an "integral part of the deed" when it was referred to in that deed]; *Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 609 [98 Cal.Rptr.2d 277] [judgment on the pleadings improperly granted based on plaintiff's failure to specifically state in its complaint that it was "incorporating by reference" several documents that were attached to the complaint and were discussed and referred to therein].)

█ Read together, and as relevant here, these cases stand for the uncontroversial proposition that when an ordinance refers to a separate statute or document, the substance of the latter will affect the meaning of the former. This is simply a way of giving effect to all the words within an ordinance when ascertaining its meaning. (See *Donovan v. Poway Unified School Dist.* (2008) 167 Cal.App.4th 567, 589–590 [84 Cal.Rptr.3d 285] [when interpreting a statute, courts strive to give effect to every word and phrase].) Here, the issue is not the *meaning* of ordinance No. 1961, but whether its "text" includes documents not explicitly incorporated. It is one thing to say that a statute's reference to a different statute or document incorporates the substance of that other statute or document; it is quite different to say the "text" of a statute includes any document or other law referred to in the statute.

Were we interpreting the meaning of ordinance No. 1961, it might well be necessary to look to the specific language of the development plan to which that ordinance refers. But that is not our task here. Rather, we must determine whether a document that is not attached to an ordinance and is not explicitly incorporated by reference can be said to be a part of the "text" of the ordinance that must be included in a referendum petition. For reasons we have already discussed, treating such documents as the "text" of an ordinance would place an unreasonable burden on referendum proponents in ascertaining the requisite contents of their petition.

█ Finally, the Lins suggest a different result is required because under local law, a development plan for an approved PUD such as the Oak Grove project constitutes the actual zoning legislation for the project. (See Pleasanton Mun. Code, § 18.68.110, subd. A ["The development plan is intended to provide to the city a comprehensive plan of the proposed development to ensure that the intent and purposes of the planned unit development district

are effectuated. The development plan may proceed as a single program or in phases, but in either situation, it is part of the entire PUD zoning process."].) That a development plan has much the same effect as a zoning ordinance does not mean that all ordinances referencing a development plan can be deemed, as a matter of law, to have incorporated that plan by reference. The local zoning laws of Pleasanton do not supersede the provisions of section 9238 and the statewide requirements for referendum petitions.

The referendum petition circulated by Ayala complied with the literal requirements of section 9238 and the trial court erred when it granted the writ based on its determination that the petition did not contain the full text of ordinance No. 1961. The Lins have not argued that the judgment in their favor may be upheld on alternative grounds rejected by the trial court, i.e., that the writ should have been granted with respect to the second or third cause of action. We therefore reverse the judgment granting the petition for writ of mandate and order that the petition be denied. Given our resolution of this issue, we need not address Ayala's alternative claim that the Lins' challenges to the referendum were not ripe for review.

B. *Anti-SLAPP Motion and Attorney Fees*

Ayala argues that the trial court abused its discretion when it denied her anti-SLAPP motion with respect to the first two causes of action. We disagree.

Code of Civil Procedure section 425.16 was enacted to provide a remedy for the "disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (Code Civ. Proc., § 425.16, subd. (a).) The statute provides a mechanism for quickly identifying and eliminating civil actions filed for the purpose of chilling the exercise of free speech. Under section 425.16, subdivision (b)(1), "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

Courts must follow a two-step process when determining whether a defendant's anti-SLAPP motion should be granted. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one 'arising from' protected activity. [Citation.] If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim. [Citation.]" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76 [124 Cal.Rptr.2d

519, 52 P.3d 695] (*Cotati*); see also *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].) On appeal, our review is de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325–326 [46 Cal.Rptr.3d 606, 139 P.3d 2].)

■ In considering whether a defendant has met the first prong of the anti-SLAPP analysis, "the mere fact an action was filed after protected activity took place does not mean it arose from that activity. The anti-SLAPP statute cannot be read to mean that 'any claim asserted in an action which arguably was filed in retaliation for the exercise of speech or petition rights falls under section 425.16, whether or not the claim is *based on* conduct in exercise of those rights.' [Citations.]" (*Cotati, supra*, 29 Cal.4th at pp. 76–77.) "That a cause of action arguably may have been triggered by protected activity does not entail that it is one arising from such . . . . [¶] . . . [T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.]" (*Id.* at p. 78.)

■ The writ petition's first cause of action challenged the referendum petition circulated by Ayala based on its alleged failure to include the full text of the challenged ordinance as required by section 9238, subdivision (b). The second cause of action asserted the petition violated section 9238, subdivision (b) because it did not advise voters that a vote setting aside ordinance No. 1961 (approving the development plan) would also nullify ordinance No. 1962 (approving the development agreement). A referendum is, generally speaking, the petitioning of one's government. But section 9238's procedural requirements do not purport to regulate the substance of referenda and do not infringe upon a proponent's right of petition or free speech. (*Billig, supra*, 223 Cal.App.3d at pp. 969–970 [considering effect of 1st Amend. on procedures under former § 4052, predecessor statute to § 9238].)

The crux of the Lins' first two causes of action was that Ayala failed to comply with the statutorily established rules for placing the referendum on the ballot. The case is similar to *City of Riverside v. Stansbury* (2007) 155 Cal.App.4th 1582 [66 Cal.Rptr.3d 862] (*Stansbury*), in which the city sought a judicial declaration that a proposed initiative was invalid because it restricted the city's right of eminent domain. The court in *Stansbury* rejected the argument that the city's preelection lawsuit challenging the constitutionality of an initiative measure arose from protected activities by the initiative's proponents. "By its declaratory relief action, the City was simply asking for guidance as to the constitutionality of the proposed initiative. Indeed, the City did nothing to limit respondents' activities in connection with the initiative,

nor did the City, by its action, otherwise impact respondents' First Amendment rights. Moreover, it was proper for the City to initiate its declaratory relief action as a means of disputing, in a preelection challenge, the validity of the initiative." (*Id.* at pp. 1590–1591.)

 Even if we assume the first two causes of action arose from Ayala's right of petition, her anti-SLAPP motion fails under the second prong of the analysis, which asks whether the Lins established a probability of prevailing on their claims. To meet this standard, a plaintiff " ' "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' " (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88–89 [124 Cal.Rptr.2d 530, 52 P.3d 703].) The plaintiff need only establish that his or her claim has minimal merit to avoid being stricken as a SLAPP. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291 [46 Cal.Rptr.3d 638, 139 P.3d 30].)

Though we have concluded that the referendum petition in this case complied with section 9238, the first and second causes of action challenging that petition were legally sufficient and possessed at least the "minimal merit" necessary to withstand an anti-SLAPP motion. Under the authorities cited by the Lins, there was at least a reasonable argument to be made that the referendum petition was defective due to its failure to include the development agreement that was the subject of ordinance No. 1961 or the text of related ordinance No. 1962. (See *Mervyn's, supra,* 69 Cal.App.4th at pp. 96–105.)

Ayala also argues that the trial court erred when it denied her request for attorney fees and costs under Code of Civil Procedure section 425.16, subdivision (c), which provides, "In any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to [Code of Civil Procedure] Section 128.5." Ayala submits that because the trial court granted her anti-SLAPP motion with respect to the third cause of action for false and misleading statements under section 18600, she was a prevailing party entitled to recover at least a portion of the fees incurred for bringing the motion.

 The anti-SLAPP statute reflects the Legislature's "strong preference for awarding attorney fees to successful defendants." (*Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328, 338 [42 Cal.Rptr.3d 607] (*Mann*).) The term "prevailing party" must be "interpreted broadly to favor

an award of attorney fees to a partially successful defendant." (*Ibid.*, citing *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1018 [113 Cal.Rptr.2d 625].) However, a fee award is not required when the motion, though partially successful, was of no practical effect. (*Moran v. Endres* (2006) 135 Cal.App.4th 952, 955–956 [37 Cal.Rptr.3d 786] [the trial court did not abuse its discretion when it denied the defendant's fees for an anti-SLAPP motion that challenged numerous tort claims brought by the plaintiff but succeeded in striking only a single cause of action for conspiracy].) "[A] party who partially prevails on an anti-SLAPP motion must generally be considered a prevailing party unless the results of the motion were so insignificant that the party did not achieve any practical benefit from bringing the motion. The determination whether a party prevailed on an anti-SLAPP motion lies within the broad discretion of a trial court." (*Mann, supra,* 139 Cal.App.4th at p. 340.)

The trial court in this case declined to award Ayala fees under the anti-SLAPP statute because it determined "the results of the anti-SLAPP motion are insignificant such that defendant did not achieve any practical benefit from bringing the motion. [Citation.] Here, the Court has granted the Petition for Writ of Mandate, rendering the Third Cause of Action moot. Further, in its order issued concurrently herewith, the Court has sustained Defendant's demurrer to the Third Cause of Action. Thus, granting the Motion has no effect on the proceedings."

Because we are reversing the order granting the writ, the first basis for the trial court's determination that Ayala was not a prevailing party is no longer true. The second basis for the ruling—that Ayala's demurrer to the third cause of action would have been granted in any event, making the anti-SLAPP motion redundant—runs contrary to the policy of the anti-SLAPP statute by effectively penalizing defendants facing claims that are lacking in facial merit and are subject to a demurrer in addition to an anti-SLAPP motion. Under the circumstances, it is appropriate to remand the case to the trial court so that it can reconsider its ruling on the prevailing party issue and award reasonable attorney fees and costs if, upon reconsideration, it determines Ayala is a prevailing party.

### III. *DISPOSITION*

The judgment (order granting the petition for writ of mandate) is reversed. The matter is remanded to the trial court with directions that it enter an order denying the writ and requiring that the city either repeal ordinance No. 1961 or submit that ordinance to the voters at an election held in accordance with section 9241. Real party in interest Ayala shall recover her ordinary costs on appeal.

The order denying the special motion to strike as to counts one and two and granting the motion as to count three is affirmed. The case is remanded to the trial court for a determination of whether real party in interest Ayala is a "prevailing party" under Code of Civil Procedure section 425.16, subdivision (c), and, if the court so determines, to make an award of reasonable attorney fees and costs under that statute.

Simons, Acting P. J., and Bruiniers, J.,* concurred.

A petition for a rehearing was denied August 11, 2009, and the opinion was modified to read as printed above. The petition of plaintiffs and respondents for review by the Supreme Court was denied October 14, 2009, S175754.

---

*Judge of the Contra Costa Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.