Filed 3/13/17   (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JAMES P. WILSON et al., | A149153 |
|      Plaintiffs and Appellants, | (Napa County<br>Super. Ct. No. 16CV000457) |
| v. | |
| COUNTY OF NAPA et al., | ORDER MODIFYING OPINION;<br>NO CHANGE IN JUDGMENT |
|      Defendants and Respondents. | |

THE COURT:

It is ordered that the opinion filed herein on February 28, 2017, be modified as follows:

1. On page 7, line 13, the citation "(§ 4052)" is changed to "(§ 9238, formerly § 4052)" so that the sentence reads:

> As is true of the full text requirement applicable to referendum petitions (§ 9238, formerly § 4052), "the statute's underlying purpose [is] minimizing the possibility prospective signers may misunderstand the purpose of a petition."

2. On page 10, line 12, the word "Respondents" is changed to "Proponents" so that the sentence reads:

> Proponents also seek to minimize the significance of the best management practices incorporated into the petition.

3. On page 11, line 16, delete the second "of" so that the sentence reads:
> The decision also "enforce[d] the statute's underlying purpose of minimizing the possibility prospective signers may misunderstand the purpose of a petition."

There is no change in the judgment.

Dated: _____                    _____ Acting P. J.

Trial court:                                    Napa County Superior Court

Trial judge:                                    Honorable Diane M. Price

Counsel for Plaintiffs and Appellants:          SHUTE, MIHALY & WEINBERGER LLP,
                                                Rachel B. Hooper, Robert S. Perlmutter, and
                                                Susannah T. French

                                                REMCHO, JOHANSEN & PURCELL,
                                                Robin B. Johansen, Margaret R. Prinzing for
                                                California Wildlife Foundation, California Native
                                                Plant Society, Corporate Ethics International,
                                                Environmental Defense Center, Forests Forever,
                                                Forest Unlimited, Friends of Harbors, Beaches and
                                                Parks, Greenbelt Alliance, Planning & Conservation
                                                League, and Save the Bay as Amicus Curiae on
                                                behalf of Plaintiffs and Appellants

Counsel for Defendants and                      MILLER STARR REGALIA, Arthur F. Coon
Respondents:                                    OFFICE OF COUNTY COUNSEL, Minh C. Tran

                                                NIELSEN MERKSAMER PARRINELLO GROSS
                                                & LEONI LLP, Sean P. Welch and Hilary J. Gibson,
                                                for Winegrowers of Napa County, Napa Valley
                                                Vintners, Napa County Farm Bureau, and Napa
                                                Valley Grapegrowers as Amicus Curiae on behalf of
                                                Defendants and Respondents

                                                COTA COLE LLP, Derek P. Cole for League of
                                                California Cities and California State Association of
                                                Counties as Amicus Curiae on behalf of Defendants
                                                and Respondents

A149153

Filed 2/28/17  (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JAMES P. WILSON et al.,<br><br>  Plaintiffs and Appellants,<br><br>v.<br><br>COUNTY OF NAPA et al.,<br><br>  Defendants and Respondents. | A149153<br><br>(Napa County<br>Super. Ct. No. 16CV000457) |

James P. Wilson and Michael Hackett (proponents) appeal the denial of their petition for a writ of mandate seeking to compel respondents, the County of Napa and John Tuteur in his official capacity as Registrar of Voters for the County of Napa (collectively, the registrar), to place on the county ballot their proposed initiative measure entitled "Water, Forest and Oak Woodland Protection Initiative of 2016." The registrar refused to do so as he was advised by county counsel that the measure does not comply with the "full text" requirement of Elections Code section 9101[1] because the measure includes a permit requirement for removing certain oak trees requiring compliance with the best management practices set forth in appendix D, sections 1 and 3 of the "Napa County Voluntary Oak Woodland Management Plan (2010)" without including the text of those best management practices. We conclude that the trial court correctly held the proposed initiative does not comply with the full text requirement. The measure does not simply cross-reference another provision of law but would enact as binding conditions for permission to remove certain oak trees what are now only recommended measures for voluntary compliance.

---

[1] Unless otherwise indicated, all statutory references are to the Elections Code.

1

## Background

In February 2016 proponents submitted to the registrar their initiative petition containing the requisite number of signatures for "submission of the measure to the voters of the County of Napa at the earliest special or general election for which it qualifies." After initially certifying that the initiative qualified for placement on the ballot, the registrar rejected the petition based on advice from county counsel that the measure did not comply with the full text requirement of section 9101.

The initiative measure consists of 10 sections filling 18 pages. Its purpose is stated to be "to protect the water quality, biological productivity and economic and environmental value of Napa County's streams, watersheds, wetlands and forests, and to safeguard the public health, safety and welfare of the county's residents." By various amendments to the county's general plan and the county code, the measure would, among other things, amend the goals and policies of the general plan, require additional water quality buffer zones to be established along streams and wetlands, and increase the minimum ratio for replacing lost oak woodlands in an agricultural watershed zoning district from a 2:1 ratio to a 3:1 ratio. The measure would also add to title 18 of the Napa County Code a new section 18.20.060, establishing an "Oak Removal Permit Program," which contains the provisions found to be in noncompliance with section 9101.

Section 18.20.060 would require one to obtain an "Oak Removal Permit" to remove from a single parcel of five or more acres within an agricultural watershed district during a calendar year any valley oak tree (of a specified minimum size) or 10 or more oak trees of any species (of a specified minimum size). The section specifies the information that must be included in an application for an oak removal permit, which must include a proposed oak removal plan prepared and signed by a registered professional forester or certified arborist. The plan must include, among other information, "remediation measures," and a permit may not be approved if "[p]roposed remediation measures are not adequate under subsection (E)." Subsection (E) in turn provides, among other things, "At a minimum, adequate remediation . . . shall include: [¶] 1. *Compliance with the best management practices for tree protection during*

2

*construction activities set forth in Appendix D, Section 1 of the Napa County Voluntary Oak Woodland Management Plan (2010)*; and [¶] 2. Replacement of removed oak trees or oak woodlands at a 3:1 ratio or permanent preservation of comparable oak trees or oak woodlands at a 3:1 ratio by: [¶] a. Permanently preserving comparable oak trees or oak woodlands on-site through dedications, conservation easements, or similar measures; or [¶] b. Replanting and monitoring of replacement oak trees on-site pursuant to a plan that ensures replacement of failed plantings and *complies with the best management practices for Maintenance, Restoration, and Rehabilitation of Oak Woodlands set forth in Appendix D, Section 3 of the Napa County Voluntary Woodland Management Plan (2010).*" (Italics added.)

When the registrar rejected the petition because the initiative does not include or attach the provisions of the "Napa County Voluntary Woodland Management Plan" (the management plan) specifying the best management practices referred to in section (E), the proponents sought a writ of mandate directing the registrar to place the initiative on the ballot. Following a hearing, the superior court denied the petition for a writ of mandate, reasoning as follows: "The initiative, in referencing sections 1 and 3 and deeming them mandatory, will enact them into binding legal requirements under proposed County Code section 18.20.060. [Proponents'] argument that the [best management practices] are not being enacted or adopted is belied by the plain and specific language of the initiative. . . . [¶] . . . [B]ecause the text of sections 1 and 3 in Appendix D of the Napa County Voluntary Oak Woodland Management Plan (2010) was omitted from the initiative petition that was circulated for signatures, the initiative does not contain 'the full and complete text of everything that will be enacted if the voters approve it' as is required by Elections Code section 9201," citing *We Care—Santa Paula v. Herrera* (2006) 139 Cal.App.4th 387, 390 (*We Care*).

Proponents promptly filed an "emergency petition" in this court for issuance of an extraordinary writ, which this court denied summarily without reaching the merits, as did the Supreme Court with respect to an emergency petition filed in that court. Proponents

3

then filed a notice of appeal, and this court granted an application for expedited review so that the matter may be resolved before the next local election.

## Discussion

Because there is no dispute as to the facts and the issue presented is solely one of statutory interpretation, we review the matter de novo. (*Alliance for a Better Downtown Millbrae v. Wade* (2003) 108 Cal.App.4th 123, 129.)

Section 9101 of the Elections Code requires an initiative petition to contain the full text of the measure that the initiative proposes to enact.[2] In reviewing compliance with this requirement, immaterial deviations may be excused so long as there is substantial compliance. "[T]he governing California decisions consistently have applied a 'substantial compliance' rule in this context, realistically evaluating whether the particular defect in question frustrates the purposes of the applicable election requirement." (*Costa v. Superior Court* (2006) 37 Cal.4th 986, 1027.) "[I]n determining whether a departure from statutory requirements imposed on initiative or referendum petitions by election-law provisions should be viewed as invalidating a circulated petition, past California decisions have been most concerned with departures that affect the integrity of the process by misleading (or withholding vital information from) those persons whose signatures are solicited." (*Id.* at p. 1016.) "[T]he type of defect that most often has been found fatal is the failure of an initiative or referendum petition to comply

---

[2] The registrar correctly cited and respondents have defended his actions based on this requirement as it appears in section 9101, which applies to county ordinances. In its decision upholding the registrar's action, the superior court relied on section 9201, the section that applies to municipal ordinances and is discussed in the principal cases relied on by the parties. Both sections require the petition to contain the text of the proposed initiative. Section 9101 refers to "the full text of the proposed ordinance" and section 9201 refers to "the text of the measure." No party attaches any significance to this difference in terminology. A similar requirement applies to petitions for state initiatives. Article II, section 8, subdivision (b) of the California Constitution provides that a petition for such a measure must set forth "the text of the proposed statute or amendment to the Constitution." Section 9012, which applies to state initiatives, requires each section of the petition to contain "a full and correct copy of the circulating title and summary and text of the proposed measure."

4

with the statutory requirement of setting forth in sufficient detail the text of the proposed initiative measure or the legislative act against which the referendum is brought 'so that registered voters can intelligently evaluate whether to sign the initiative petition and to avoid confusion.' " (*Id.* at p. 1016, fn. 22.)

The initiative petition in this case sets forth in full all of the provisions that the initiative proposes to enact. However, because the measure incorporates provisions of the management plan without stating or attaching those provisions, the registrar contends the petition does not comply with the full text requirement for the same reasons that the petition was held not to comply in *Mervyn's v. Reyes* (1998) 69 Cal.App.4th 93 (*Mervyn's*). In *Mervyn's*, the initiative petition "referred to, but did not actually contain, the various provisions" that the initiative would have enacted. (*Id.* at p. 99.) In that case, the proposed initiative read: " 'The people hereby re-enact the open space land use designations (Parks and Recreation, Baylands, Limited Open Space) of the General Policies Plan Map and the supporting policies in Chapter VII: Open Space, Parks and Recreation, Chapter VIII: Environmental Concerns and Chapter IX: Urban Design of the General Policies Plan of the City of Hayward in effect on January 1, 1996.' " (*Mervyn's,* pp. 96-97.) The actual text of the referenced policies was not included in or attached to the petition. The court held that "The purpose of the full text requirement is to provide sufficient information so that registered voters can intelligently evaluate whether to sign the initiative petition and to avoid confusion." (*Id.* at p. 99.) "[I]t is imperative that persons evaluating whether to sign the petition be advised which laws are being challenged and which will remain the same. Only inclusion of the existing general plan will accomplish such purpose." (*Id.* at p. 104.) Although the text of the initiative petition contained reference to the policies that the measure would enact, because the petition omitted the text of those policies which the court considered "the key element of the initiative," the petition did not comply with the full text requirement and the city council had the ministerial duty to reject the petition. (*Id.* at pp. 104-105.)

Proponents, on the other hand, place heavy reliance on *We Care, supra,* 139 Cal.App.4th 387, in which the court held that the failure to include in an initiative petition

the text of the land use element of the city's general plan, to which reference was made in the petition, did not cause the petition to violate the full text requirement. In *We Care,* the proposed initiative read in part: " 'This initiative hereby *Amends* the General Plan Land Use Element adopted on or about April 13, 1998, and as amended thereafter, to require any future amendment to the general plan land use element involving a development, proposed development, or land use designation, which would have the effect of increasing the density as currently reflected in the land use element on a gross of 81 or more acres, to be approved by a majority of the voters at a general or special election.' " (*Id.* at pp. 388-389.) The Court of Appeal held that although the petition sought to amend the general plan, "the amendment does not change any land use or density designated in the general plan. Nor does it even purport to prohibit any change in land use or density. It simply adds a provision to the general plan requiring that any increase in density for projects involving 81 or more acres be approved by popular vote. The petition contains the full text of the measure. There is no need to include any portion of the general plan. Certainly, the passage of We Care's initiative will affect the general plan. But [the statute] does not require that a petition include the text of every plan, law or ordinance the measure might affect." (*Id.* at p. 390.)

The court in *We Care* distinguished the petition in *Mervyn's* and in other cases finding petitions not to comply with the full text rule. "We Care's petition does not seek to amend the general plan by nothing more than reference to headings, titles or numbers. Unlike [several other cases], We Care's petition does not omit the text of an incorporated exhibit or any other portion of the proposed enactment. Instead, the petition contains the full and complete text of everything that will be enacted if the voters approve it." (*We Care, supra,* 139 Cal.App.4th at p. 390.)

The distinction drawn in *We Care* is dispositive and confirms that the proposed initiative in this case does not comply with the full text rule. The initiative in *We Care*, which complied with the statutory requirement, set forth "the full and complete text of everything that will be enacted if the voters approve it." (*We Care*, *supra*, 139 Cal.App.4th at p. 390.) The proposed initiative in *Mervyn's,* which did not comply,

merely "referred to, but did not actually contain, the various provisions" that the initiative would have enacted. (*Mervyn's, supra,* 69 Cal.App.4th at p. 99.) The latter is the case here. Without stating or attaching the content of the best management practices included in the management plan, to which the measure refers, the proposed initiative would convert what are now recommended voluntary practices into mandatory practices with which an applicant would be required to comply in order to obtain a removal permit. A person presented with the petition could not ascertain from the petition itself the content of the best management practices to which the proposed initiative refers but would be required to do extraneous research to learn what practices the measure would require of a permit applicant. "The purpose of the full text requirement is to provide sufficient information so that registered voters can intelligently evaluate whether to sign the initiative petition and to avoid confusion." (*Ibid*.) As is true of the full text requirement applicable to referendum petitions (§ 4052), "the statute's underlying purpose [is] minimizing the possibility prospective signers may misunderstand the purpose of a petition." (*Nelson v. Carlson* (1993) 17 Cal.App.4th 732, 740.) Although technical deficiencies in a petition will not invalidate the petition if there is substantial compliance with the statutory requirements, there is no substantial compliance if the defect frustrates the purpose of the requirement. (*Id.* at p. 737, accord *Billig v. Voges* (1990) 223 Cal.App.3d 962, 968.) The omission of the best management practices with which the proposed initiative would compel compliance frustrates the purpose of the full text rule and therefore invalidates the petition.

Proponents' principal argument is that "the initiative on its face clearly does not enact best management practices, either expressly or otherwise." But as the trial court correctly observed, this contention is belied by the terms of the measure, set out above. In order for a holder of five or more acres to obtain a permit to remove oak trees in the area to which the measure would apply, it would be necessary to comply with management practices that are not at present mandatory. The initiative would impose legal obligations

on permit applicants that do not presently exist and in that sense the best management practices would clearly be "enacted."[3]

Proponents overstate the consequences of this conclusion. We do not imply that cross-references may never be included in an initiative petition. Cross-references are commonly and permissibly used in both initiatives and referendums. Their inclusion presents no problem so long as the reference does not create or impose new legal obligations that are not otherwise specified in the measure. That not all cross-references impose new legal obligations invalidating a petition is exemplified by the several propositions in the 2016 statewide ballot to which proponents refer in their argument.[4] These initiatives did not purport to enact cross-referenced provisions by making previously voluntary practices mandatory, as does the initiative before us. The first initiative cited by the proponents merely relates to the manner of amending the cross-referenced statute, much like the initiative in *We Care, supra,* 139 Cal.App.4th 387.[5] In most of the others the cross-referenced provisions had previously been enacted and the initiative merely required compliance with pre-existing obligations.[6] Thus, there is no

---

[3] Webster's Third New International Dictionary defines "enact" to mean, inter alia, "to establish by legal and authoritative act: make into a law."

[4] Proponents' initial request for judicial notice is granted. Proponents supplemental request for judicial notice is denied.

[5] Proposition 52 on the 2016 ballot amended the Medi-Cal Hospital Reimbursement Improvement Act of 2013 as follows: "Sec. 3.5. (a) No statute amending or adding to the provisions of the Medi-Cal Hospital Reimbursement Improvement Act of 2013 shall become effective unless approved by the electors in the same manner as statutes amending initiative statutes pursuant to subdivision (c) of Section 10 of Article II, except that the Legislature may, by statute passed in each house by roll call vote entered into the journal, two-thirds of the membership concurring, amend or add provisions that further the purposes of the act."

[6] Proposition 63 on the 2016 ballot, proponent's second example, included this amendment to the Penal Code: "Commencing January 1, 2018, a firearms dealer licensed pursuant to Sections 26700 to 26915, inclusive, shall automatically be deemed a licensed ammunition vendor, provided the dealer complies with the requirements of Articles 2 (commencing with Section 30300) and 3 (commencing with Section 30342) of Chapter I of Division 10 of Title 4." Proposition 64 on the 2016 ballot, the "marijuana initiative,"

8

merit to proponents' argument that "the trial court's expansive new 'full text' requirement would render all of these propositions invalid for failing to include the language of the referenced policies as part of their 'text.' " The interpretation of the full text requirement adopted by the trial court which we affirm is neither new nor would it invalidate all other initiatives containing a cross reference.

Nor is there any inconsistency between this conclusion and the decision in *Lin v. City of Pleasanton* (2009) 176 Cal.App.4th 408, on which proponents also rely. *Lin* upheld the sufficiency of a referendum petition that sought to rescind an ordinance approving a 51-unit residential development. The petition contained the text of the ordinance, the exhibits attached to and incorporated by reference into the ordinance and an exhibit to one of those exhibits. "No documents that were attached or specifically incorporated into the ordinance were omitted." (*Id*. at p. 417.) The petition did not include a copy of the development plan that the ordinance had adopted. The Court of Appeal acknowledged that an informed voter might wish to review portions of the plan

provides: "The Department of Pesticide Regulation, in consultation with the State Water Resources Control Board, shall promulgate regulations that require that the application of pesticides or other pest control in connection with the indoor, outdoor, or mixed light cultivation of marijuana meets standards equivalent to Division 6 (commencing with Section 11401) of the Food and Agricultural Code and its implementing regulations." The initiative also requires all marijuana product labels and inserts to include "a list of all ingredients and disclosure of nutritional information in the same manner as the federal nutritional labeling requirements in Section 101.9 of Title 21 of the Code of Federal Regulations." The initiative contains numerous additional cross-references, none of which enact the provisions to which they refer. For example, "a licensee that is also a dispensary under Chapter 3.5 (commencing with Section 19300) of Division 8 may: [¶] (1) Allow on the premises any person 18 years of age or older who possesses a valid identification card under Section 11362.71 of the Health and Safety Code and a valid government-issued identification card."

Proposition 67 on the 2016 ballot, relating to reusable grocery bags, proponent's final example, contained a provision exempting bags meeting another standard from its provisions: "A reusable grocery bag made from plastic film that meets the specifications of the American Society of Testing and Materials (ASTM) International Standard Specification for Compostable Plastics D6400, as updated, is not required to meet the requirements of subparagraph (A) or (B) of paragraph (1), but shall be labeled in accordance with the applicable state law regarding compostable plastics"

9

before deciding whether to sign the petition, but the development plan was not part of the text of the ordinance. More importantly, it was significant that unlike the initiative petition involved in *Mervyn's*, *supra,* 69 Cal.App.4th 93, the court was reviewing a referendum petition and "[a]n initiative is drafted by its proponents and is the very law whose enactment is sought, whereas a referendum seeks to set aside a law that has been drafted by others. [Citations.] [¶] . . . [T]he proponents of a referendum petition are required by statute to include the text of the ordinance being challenged and are thus constrained by language drafted by others." (*Lin, supra,* at p. 419.) Moreover, the text of the referendum petition was not misleading since it advised voters that the project at issue was a 51-unit residential development on 562 acres. (*Ibid.*)

Respondents also seek to minimize the significance of the best management practices incorporated into the petition. They argue that the initiative "simply uses the County's existing best management practices as a reference point to provide minimum standards for the Planning Director's discretionary review of oak removal plans and permits" and that these practices "come into play only in the limited circumstances where an oak removal plan is required—and then only where the applicant proposes to undertake construction or proposes replanting as a form of remediation." An amicus brief in support of the proponents' position argues that "The cross-referenced provisions are neither controversial nor central to the measure itself. Instead, they are just what their name implies: best management practices for ensuring that trees are not harmed during construction and that replacement trees will grow."

Nonetheless, despite the discretion that the measure would confer on the director to issue a permit and under certain circumstances to waive compliance with the specified practices, the best management practices are stated to be minimum standards with which permit applicants will normally be expected to comply. While some of the practices may be "common sense measures," as amici argue, they are in many respects quite detailed

10

and specific.[7] However commonsensical or onerous the practices may be, the point is that a voter presented with the initiative petition cannot make that evaluation from the face of the petition. Proponents argue that it is unrealistic to expect that a voter would study the management practices if they were attached to the petition, and that adding the three pages of sections 1 and 3 of appendix D of the management plan to the 18-page initiative would as a practical matter decrease the readability and understanding of the measure. In *Nelson v. Carlson* (1993) 17 Cal.App.4th 732, a referendum petition challenging the adoption of a general plan and a local coastal program land use plan amendment was invalidated for noncompliance with the full text requirement in section 4052, which applies to referendum petitions. The general plan in that case was "several hundred pages long and roughly two and one-half inches thick" (*Nelson*, p. 739), yet the Court of Appeal held that the proponents "were required to attach the plan to their referendum petition" (*id*. at p. 740). That conclusion "enforce[d] the express requirements" of the "text" directive in section 4052, to which the Legislature had delineated no exception "for bulky ordinances or resolutions." (*Nelson*, p. 740.) The decision also "enforce[d] the statute's underlying purpose of minimizing the possibility of prospective signers may misunderstand the purpose of a petition." (*Ibid*.) The same must be said, a fortiori, in the present case. (See also, e.g., *Mervyn's, supra,* 69 Cal.App.4th at pp. 103-104; *Billig v. Voges, supra,* 223 Cal.App.3d at p. 968.)

---

[7] The "general guidelines or best management practices for tree protection during construction activities," for example, include establishing a root protection zone roughly one-third larger than the outermost edge of the foliage based on the longest branch, installing high visibility fencing (four feet high and bright orange with steel t-posts spaced eight feet apart) around the zone "or any tree cluster of trees with overlapping canopy that are identified on an approved grading plan as needing protection," and several prohibitions. The specified practices for maintenance, restoration and rehabilitation of oak woodlands include two and one-half pages of specific practices covering "Acorn Collection and Storage Procedures," "Methods for Sowing Acorns of Rangeland Oaks in the Field," "Procedures for Planting Rangeland Oaks," "Weed Control Procedures," "Methods of Protecting Trees from Animals," "Procedures for Tree-shelter Installation," "Tree-shelter Maintenance Procedures," and "Fertilization, Irrigation and Top Pruning."

Moreover, the registrar has the ministerial task of placing on the ballot measures submitted in compliance with the statutory requirements. Whether a petition complies is to be determined by the registrar based only on the face of the petition presented. (*Alliance for a Better Downtown Millbrae v. Wade, supra,* 108 Cal.App.4th at pp. 132-133; *Billig v. Voges, supra,* 223 Cal.App.3d at pp. 968-969.) From the face of the petition in this case, it is apparent that the proposed measure would require permit applicants to comply with requirements specified in a document that is referenced but not attached or otherwise articulated in the petition. Noncompliance therefore appears on the face of the petition. It would be inconsistent with the ministerial nature of the registrar's responsibilities to hold that he is obligated to evaluate the length or significance of the omitted materials in determining whether the petition complies with the full text requirement. Mandate lies only to enforce ministerial duties. Here, the registrar did not fail to perform a ministerial duty when he determined that the proposed initiative, on its face, does not comply with the full text requirement of section 9101. Proponents' petition for a writ of mandate was properly denied.

### Disposition

The judgment is affirmed.

_____
Pollak, Acting P.J.

We concur:

_____
Siggins, J.

_____
Jenkins, J.

| Trial Court: | Napa County Superior Court |
|---|---|

| Trial Judge: | Hon. Diane M. Price |
|---|---|

SHUTE, MIHALY & WEINBERGER, Rachel B. Hooper, Robert S. Perlmutter, Susannah T. French for Plaintiffs and Appellants

COTA COLE LLP, Derek P. Cole for League of California Cities and California State Association of Counties and REMCHO, JOHANSEN & PURCELL, Robin B. Johansen, Margaret R. Prinzing for California Wildlife Foundation, California Native Plant Society, Corporate Ethics International, Environmental Defense Center, Forests Forever, Forest Unlimited, Friends of Harbors, Beaches and Parks, Greenbelt Alliance, Planning & Conservation League, and Save the Bay as Amicus Curiae on behalf of Plaintiffs and Appellants

MILLER STARR REGALIA, Arthur F. Coon and OFFICE OF COUNTY COUNSEL, Minh C. Tran for Defendants and Respondents

A149143